PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 1 2000
THOMAS K. KAHN
CLERK

-----------------------------------------

No. 97-8500

-----------------------------------------

D.C. Docket No. 1:92-cv-2253

FRED MARION GILREATH, JR.,

Petitioner-Appellant,

versus

FREDERICK J. HEAD,

Respondent-Appellee.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

-------------------------------------------------------------------

(December 1, 2000)

Before TJOFLAT, EDMONDSON and BLACK, Circuit Judges.

EDMONDSON, Circuit Judge:

Petitioner, Fred Marion Gilreath, Jr., was convicted of two murders and sentenced to death by a Georgia court.[1]  Petitioner brought this habeas petition in federal district court, pursuant to 28 U.S.C. § 2254, challenging his convictions and sentence on several grounds.  Among other things, Petitioner alleged that he received ineffective assistance of counsel at sentencing because his trial counsel failed to present mitigating evidence.  The district court rejected Petitioner's claims and denied relief.  We affirm.[2]

---

[1] Petitioner's convictions and sentence were affirmed on direct appeal.  See Gilreath v. State, 279 S.E.2d 650 (Ga. 1981), cert. denied, 102 S. Ct. 2258, reh'g denied, 102 S. Ct. 3500 (1982).  Petitioner twice sought post-conviction relief in state court, but Petitioner's state habeas petitions were rejected.  See Gilreath v. Kemp, 107 S. Ct. 292, reh'g denied, 107 S. Ct. 605 (1986) (denying certiorari on first state habeas petition); Gilreath v. Zant, 112 S. Ct. 240, reh'g denied, 112 S. Ct. 629 (1991) (denying certiorari on second state habeas petition).

[2] Only Petitioner's claim that his trial counsel was ineffective at sentencing for failing to present mitigating evidence warrants discussion.  Petitioner does raise several other claims on appeal.  In particular, Petitioner raises these other claims: (1) that the trial court improperly instructed the jury on intent and improperly failed to instruct the jury on intoxication, heat of passion, and voluntary manslaughter; (2) that the trial court improperly instructed the jury at sentencing on mitigating circumstances; (3) that Petitioner's trial counsel was ineffective for failing to object to the trial court's jury instructions at sentencing; (4) that the prosecutor's argument at sentencing was improper and rendered Petitioner's sentencing fundamentally unfair; (5) that Petitioner's trial counsel was ineffective for failing to object to the prosecutor's argument at sentencing; (6) that Petitioner's trial counsel was ineffective at sentencing for conceding Petitioner's guilt and the existence of one aggravating circumstance; (7) that Petitioner's trial counsel was ineffective at sentencing for failing to object to the trial court's submission of the State's notice of aggravating circumstances to the jury; (8) that Petitioner's Eighth Amendment right to an individualized sentencing hearing was violated by his trial counsel's failure to present mitigating evidence and by the trial court's failure to inquire on the record about the decision to present no mitigating evidence; and (9) that the district court erred at the habeas evidentiary hearing by excluding the depositions of Dr. Barry M. Crown and Dr. Barry F. Scanlon.

2

I.

A.

In May 1979, after twelve years of marriage, Petitioner and Linda Gilreath separated. After the separation, Petitioner remained in the Gilreaths' home; and Linda stayed in her mother's home. On the afternoon of 11 May 1979, Linda -- accompanied by her father, Gerritt Van Leeuwen[3] -- returned to the Gilreaths' home to retrieve some personal belongings. Linda and her father drove to the Gilreaths' home in a blue Plymouth.

Later that afternoon, police officers discovered the bodies of Linda and her father inside the Gilreaths' home. Linda had been shot five times with a .30-30 caliber rifle and once in the face with a .12 gauge shotgun. Linda's father had been shot once with a .30-30 caliber rifle, once with a .12 gauge shotgun, and twice with a .22 caliber rifle. Both bodies were covered in gasoline. When the police officers arrived at the Gilreaths' home, they did not see Petitioner or the blue Plymouth.

---

Petitioner's other claims on appeal lack merit. The district court dealt with those issues without error. So, we reject Petitioner's other claims without discussion and affirm the judgment of the district court on those claims.

[3] Linda's father also lived in the Gilreaths' home.

That night, police officers located Petitioner in North Carolina and arrested him. Petitioner was driving the blue Plymouth. Inside the car, officers found a box of .22 caliber ammunition. And, at Petitioner's cabin in North Carolina, officers found several shotgun shell cases, .30-30 caliber cartridge cases, and .22 caliber cartridge cases. Ballistics tests later linked the cases found at Petitioner's cabin to the murder weapons.

B.

A grand jury indicted Petitioner for the murders of Linda Gilreath and Gerritt Van Leeuwen. Thereafter, the State filed a notice of intent to seek the death penalty. The State identified three aggravating circumstances to support the death penalty.[4]

Petitioner retained Atlanta lawyer Tyrus R. Atkinson, Jr. ("trial counsel") as defense counsel. Petitioner told trial counsel that Petitioner was innocent of the two

---

[4] The State alleged that the murders of both (1) Linda Gilreath and (2) Gerritt Van Leeuwen were outrageously and wantonly vile, horrible, and inhuman. See O.C.G.A. § 17-10-30(b)(7). The State also alleged that the murder of (3) Van Leeuwen was committed while the offender was engaged in the commission of another capital felony. See O.C.G.A. § 17-10-30(b)(2).

4

murders.  Trial counsel accordingly prepared a vigorous defense for the guilt phase of Petitioner's trial.[5]

Trial counsel also prepared for the sentencing phase of trial.  Trial counsel spoke with Petitioner before trial about capital sentencing and about mitigating evidence.  Petitioner identified several potential witnesses -- Petitioner's relatives, friends, and coworkers -- who could testify about Petitioner's character, his past, his problems with alcohol, and his mental condition.[6]  Trial counsel obtained Petitioner's military service, medical, and mental health records.  Trial counsel also retained mental-health professionals to examine Petitioner.  And, trial counsel entertained the prospect of calling Petitioner himself to testify at sentencing.  Trial counsel, before trial began, anticipated presenting at least some of this mitigating evidence at sentencing.

---

[5] Among other things, trial counsel interviewed many witnesses, engaged an investigator to interview other witnesses, searched for other persons who might have had a motive to kill the victims, and retained an expert to determine the time of the killings.

[6] Although trial counsel did speak with most of these potential witnesses before trial, trial counsel did not conduct detailed interviews with all of the witnesses.  Trial counsel, at the habeas evidentiary hearing, explained that – because he had known Petitioner, Petitioner's family, and several of Petitioner's friends and coworkers for several years – he already was familiar with the kind of good character testimony that the witnesses might offer.  And, trial counsel explained that – because he previously had represented Petitioner when Petitioner was institutionalized on a state lunacy warrant – he already was aware of Petitioner's mental health problems and Petitioner's problem with alcohol.

At some point, however, Petitioner changed his mind about presenting mitigating evidence at sentencing. During the guilt phase of trial, Petitioner instructed trial counsel to present no mitigating evidence at sentencing.

Trial counsel attempted to persuade Petitioner to allow the presentation of mitigating evidence. Trial counsel, from time to time, spoke with Petitioner during trial about mitigating evidence. And, after the jury retired for guilt-phase deliberations, trial counsel met with Petitioner in private to discuss mitigating evidence some more. At this meeting, trial counsel reminded Petitioner that mitigating evidence of Petitioner's mental condition and of Petitioner's alcoholism was available for sentencing. But, Petitioner refused to reconsider his instructions to trial counsel. To confirm Petitioner's wishes, trial counsel had Petitioner sign a document instructing trial counsel to present no mitigating evidence.[7]

Less than one hour after trial counsel met with Petitioner about mitigating evidence, the jury returned a guilty verdict. The trial court immediately conducted a sentencing hearing. As the sentencing hearing began, trial counsel briefly spoke once again in the courtroom with Petitioner about mitigating evidence. Petitioner continued

---

[7] The document stated this message:
I hereby direct my attorney, Ty R. Atkinson, Jr., not to call any witnesses or place into evidence any documents in the mitigation phase of my murder trial. I understand that Dr. Julius Ehick, Hubert Helton, and my mother are standing by to testify to my mental condition and past problems with alcohol but I desire they not be called.

6

to desire that trial counsel present no mitigating evidence. Trial counsel accordingly proceeded with the sentencing phase and presented no mitigating evidence.[8]

## II.

Petitioner contends that his trial counsel was ineffective at sentencing for failing to present certain mitigating evidence.[9] To succeed on his ineffective assistance claim, Petitioner must show: (1) that trial counsel's performance was objectively unreasonable; and (2) that trial counsel's unreasonable performance actually prejudiced Petitioner. See Chandler v. United States, 218 F.3d 1305, ___ (11th Cir. 2000) (en banc); see also Williams v. Taylor, 120 S. Ct. 1495, 1511 (2000); Darden v. Wainwright, 106 S. Ct. 2464, 2473 (1986); Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). We can pretty easily conclude that Petitioner has failed to demonstrate prejudice. We accordingly affirm the district court's rejection of

---

[8] Trial counsel did present argument against the imposition of the death penalty. Among other things, trial counsel argued residual doubt about Petitioner's guilt and that Petitioner had no criminal history. Trial counsel also argued that – if Petitioner killed Linda Gilreath and Gerritt Van Leeuwen – he committed the murders without premeditation, in the heat of passion, and while intoxicated. And, trial counsel pointed to Petitioner's two young children and asked the jury to exercise mercy.

[9] We review Petitioner's claim of ineffective assistance de novo. Holladay v. Haley, 209 F.3d 1243, 1247 (11th Cir. 2000); Williams v. Head, 185 F.3d 1223, 1226-27 (11th Cir. 1999). We, however, defer to the district court's findings of fact unless clearly erroneous. Holladay, 209 F.3d at 1247; Williams, 185 F.3d at 1226-27.

Petitioner's ineffective assistance at sentencing claim without deciding the question of reasonable performance.

Petitioner argues that trial counsel was ineffective for failing to present mitigating good character evidence at sentencing.[10] Petitioner admits that Petitioner instructed trial counsel to present no mitigating evidence. But, Petitioner asserts that trial counsel should not have followed Petitioner's instructions because Petitioner's waiver of his right to present mitigating evidence was not a knowing and intelligent one. Petitioner argues that trial counsel should have done more to facilitate a knowing

---

[10] Petitioner also raises several other kinds of mitigating evidence that trial counsel did not present at sentencing. First, Petitioner says that trial counsel should have introduced evidence of Petitioner's mental condition and of Petitioner's problems with alcohol at sentencing. But, just before the guilty verdict was announced and the sentencing hearing commenced, trial counsel did meet with Petitioner and did discuss specifically with Petitioner the availability of mitigating evidence about Petitioner's mental condition and about Petitioner's alcohol abuse. Trial counsel had adequate opportunity to advise Petitioner about these kinds of mitigating evidence. Although Petitioner was advised specifically to allow the introduction of such evidence, Petitioner instructed trial counsel to present no such mitigating evidence. We readily conclude that trial counsel – by relying on Petitioner's instruction not to present mitigating mental health and alcohol abuse evidence – did not perform in an unreasonable manner. See United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc); see also Alvord v. Wainwright, 725 F.2d 1282, 1288-89 (11th Cir. 1984); Foster v. Strickland, 707 F.2d 1339, 1343-44 (11th Cir. 1983). We accordingly do not consider these kinds of mitigating evidence in our prejudice inquiry.

Second, Petitioner argues that trial counsel should have presented evidence of Petitioner's troubled childhood. Even assuming that trial counsel's performance was unreasonable, Petitioner clearly was not prejudiced by trial counsel's failure to present this kind of evidence. Petitioner was more than forty years old at the time of the murders, and "evidence of an abusive and difficult childhood would have been entitled to little, if any, mitigating weight." Marek v. Singletary, 62 F.3d 1295, 1300-01 (11th Cir. 1995); see also Mills v. Singletary, 63 F.3d 999, 1025 (11th Cir. 1995); Bolender v. Singletary, 16 F.3d 1547, 1561 (11th Cir. 1994).

8

and intelligent decision by Petitioner. In particular, Petitioner says that trial counsel should have: (1) advised Petitioner more fully about good character evidence for mitigation; and (2) requested that the sentencing hearing be continued overnight so that Petitioner could think about his decision some more. We conclude that the lack of these things did not prejudice Petitioner.[11]

Petitioner has the burden of proving that Petitioner was prejudiced by trial counsel's performance. See Smith v. Robbins, 120 S. Ct. 746, 764 (2000); see also Thompson v. Nagle, 118 F.3d 1442, 1452 (11th Cir. 1997). The Supreme Court has explained that habeas petitioners must affirmatively prove prejudice because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." Strickland, 104 S. Ct. at 2067.

"[T]hat the error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice. Id.; see also Tompkins v. Moore, 193 F.3d 1327, 1336 (11th Cir. 1999). Instead, Petitioner must show: "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

---

[11] About this kind of evidence, because we conclude that Petitioner has failed to show prejudice, we need not and do not reach the issue of performance. See Wright v. Hopper, 169 F.3d 695, 707 (11th Cir. 1999); see also Marek v. Singletary, 62 F.3d 1295, 1299 (11th Cir. 1995); Horsley v. State of Ala., 45 F.3d 1486, 1493 (11th Cir. 1995). Instead, we will just assume for the purposes of this appeal that trial counsel should have advised Petitioner more fully about good character evidence and that trial counsel should have requested a continuance.

sufficient to undermine confidence in the outcome." <u>Strickland</u>, 104 S. Ct. at 2068; <u>see also</u> <u>Glock v. Moore</u>, 195 F.3d 625, 635-36 (11th Cir. 1999).

In the circumstances of this case, we think that -- to establish prejudice -- Petitioner actually must make two showings. First, Petitioner must show a reasonable probability that -- if Petitioner had been advised more fully about character evidence or if trial counsel had requested a continuance -- Petitioner would have authorized trial counsel to permit such evidence at sentencing. [12] Second, Petitioner must establish that, if such evidence had been presented at sentencing, a reasonable probability exists that the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." <u>Strickland</u>, 104 S. Ct. at 2069; <u>see also</u> <u>Mills v. Singletary</u>, 63 F.3d 999, 1026 (11th Cir. 1995); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1560-61 (11th Cir. 1994); <u>Bush v. Singletary</u>, 988 F.2d 1082, 1090 (11th Cir. 1993).

---

[12] In other words, to show prejudice, Petitioner must show that – but for his counsel's supposedly unreasonable conduct – helpful character evidence actually would have been heard by the jury. If Petitioner would have precluded its admission in any event, Petitioner was not prejudiced by anything that trial counsel did. <u>Cf.</u> <u>Roe v. Flores-Ortega</u>, 120 S. Ct. 1029, 1038 (2000) ("If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."); <u>Horsley v. State of Ala.</u>, 45 F.3d 1486, 1494-95 (11th Cir. 1995) (requiring petitioner to show that witnesses not presented at trial actually were available and willing to testify at time of trial); <u>Gray v. Lucas</u>, 677 F.2d 1086, 1093 (5th Cir. 1982) (noting that "[when] a defendant alleges that his counsel's failure to investigate prevented his counsel from making an informed tactical choice, he must show that knowledge of the uninvestigated evidence would have altered his counsel's decision).

The district court found that no evidence showed that "Petitioner would have changed his directions to his counsel had he been more fully informed about mitigating evidence." We cannot say that, on this record, the district court's finding of fact is clearly erroneous.[13] See United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir. 1992) (en banc) (noting that "[w]e defer to the district court's findings of fact absent a clearly erroneous determination"). Therefore, Petitioner cannot show that trial counsel's failure to advise Petitioner fully about character evidence prejudiced Petitioner at sentencing.

The record also indicates that trial counsel's failure to seek a continuance prejudiced Petitioner in no way at sentencing. Petitioner himself testified, at the state habeas evidentiary hearing, that a continuance would have left unchanged his decision not to call his mother and his children as character witnesses. But, Petitioner did testify that, if the sentencing hearing had been continued overnight, he probably would have permitted trial counsel to call other character witnesses in mitigation, particularly Petitioner's two former employers. Although the district court made no fact finding that Petitioner would have ever allowed trial counsel to call the other mitigating witnesses, we will accept -- for the sake of our discussion -- Petitioner's testimony as

---

[13] At the state habeas evidentiary hearing, Petitioner was asked whether additional discussions with trial counsel might have persuaded Petitioner at the pertinent time to permit trial counsel to present character witnesses. Petitioner responded: "I would probably have said no."

true. We, therefore, will consider whether the other character witnesses probably would have changed the outcome of the sentencing hearing.

We are unconvinced that a reasonable probability exists that the testimony of the other character witnesses would have changed the balance of aggravating and mitigating circumstances. The State's evidence of aggravating circumstances was strong. During the guilt phase, the State's evidence showed these circumstances: that Linda Gilreath was shot once in the face at close range with a .12 gauge shotgun; that Linda was shot five times with a .30-30 caliber rifle; that Gerritt Van Leeuwen was shot four times with three different firearms; that both victims were killed in their own home; and that both victims' bodies were covered in gasoline after the killings. The jury found that three aggravating circumstances did exist: (1) that the murder of Linda Gilreath was outrageously and wantonly vile, horrible, and inhuman; (2) that the murder of Gerritt Van Leeuwen was outrageously and wantonly vile, horrible, and inhuman; and (3) that the murder of Gerritt Van Leeuwen was committed while Petitioner was engaged in the commission of another capital felony.

And, the jury -- despite Petitioner's failure to present mitigating evidence at sentencing -- did have several mitigating factors to consider. During the guilt phase and in argument at sentencing, trial counsel brought out that the evidence was not doubtless on guilt, that Petitioner had no criminal record, that Petitioner was the father

of two small children, and that Petitioner had problems with alcohol.  The testimony of the character witnesses now offered by Petitioner -- witnesses who would have testified that Petitioner was generally a good man when sober, was a good worker, and was a good father -- seems too weak to have likely changed the outcome of the sentencing.  Petitioner has failed to show the necessary prejudice.

## III.

We conclude that Petitioner, on this record, has failed to establish that he was prejudiced by trial counsel's failure to advise Petitioner about mitigating character evidence and by trial counsel's failure to seek a continuance.  The district court accordingly did not err in rejecting Petitioner's ineffective assistance of counsel at sentencing claim.  All of Petitioner's other claims similarly lack merit.  Petitioner is entitled to no habeas relief.  The judgment of the district court is AFFIRMED.

13