MARTIN, Circuit Judge, concurring in the judgment: I concur in the result reached by the majority because binding circuit precedent precludes relief for Mr. Krawczuk here.[1] This Court’s rule is that a defendant who instructs his attorney not to present mitigating evidence at trial “must make two showings” to demonstrate prejudice in support of an ineffective assistance of counsel claim. Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000). First, the defendant must show “a reasonable probability that—if [he] had been advised more fully about [mitigating] evidence or if trial counsel had requested a continuance—[he] would have authorized trial counsel to permit such evidence at sentencing.” Id. at 551. Second, he must show that “if such evidence had been presented at sentencing, a reasonable probability exists that the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Id. at 552 (quotation omitted). My review of the record reflects that Mr. Krawczuk failed to make these showings. This Court has said the rule established in Gilreath “is consistent with” the Supreme Court’s decision in Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).[2] Cummings v. Sec’y for Dep’t of Corr., 588 F.3d 1331, 1360 (11th Cir. 2009). Therefore, Mr. Krawczuk can succeed on his ineffective assistance claim only if he demonstrates a reasonable probability that, if he had been more fully advised about the mitigating evidence and its significance, he would have allowed trial counsel to present the evidence at sentencing. Mr. Krawczuk presented no such evidence. That means, under the law of this circuit, he cannot meet his burden to show prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Mr. Krawczuk’s failure to present evidence that he would have allowed presentation of a mitigation case is disposi-tive’of his claim, there is no need for the panel to reach the second prong of the prejudice inquiry. See Conner v. GDCP Warden, 784 F.3d 752, 769 & n.17 (11th Cir. 2015). The majority’s discussion of this topic is therefore unnecessary. I mention this because I respectfully disagree with how the majority resolved this issue, once it undertook to decide it. Like the majority, I look at' this question de novo. See Maj. Op. at 1297. For me, there'is certainly a reasonable probability that, if the available mitigation evidence had been presented, Mr. Krawezuk would have received a life Sentence.[3] At the postconviction evidentiary hearing, several witnesses testified to the “catastrophic” emotional and physical abuse Mr. Krawezuk experienced throughout his childhood. This testimony described the constant physical violence Mr. Krawezuk received at the hands of his “brutal” mother. There was testimony that she used Mr. Krawezuk as her “whipping post” and punished him by holding his hand to a hot stove burner. Witnesses also told of the severe emotional abuse and neglect Mr. Krawezuk experienced.'His mother made fun of his ears, calling him “Dumbo, the flying fucking elephant,” and. she ■ “never showed any kind of affection or love to [him.]” When Mr, Krawezuk would sometimes soil or wet himself, as- a child, his mother would force him to wear the soiled garments on his head or, on one occasion, stand in front of his home wearing a sign that said “I do my doodie in my pants every day.” Mr. Krawezuk also presented testimony from two mental health experts. Dr. Barry Crown' testified that Mr. Krawezuk -had brain damage resulting in impaired reasoning and judgment and that his mental processing abilities were at the level of a thirteen-year-old. According to Dr. Crown, these mental problems impaired Mr. Krawczuk’s ability to understand the long-term-effects of his behavior. Dr. Faye Sultan testified that Mr. Krawezuk suffered from a cognitive disorder that resulted in decreased impulse control, impaired reasoning, and learning problems. She testified that this “overriding blanket of dysfunction” influenced “all of his behavior.” None of this testimony was rebutted. And all of it was clearly relevant mitigation. See Porter v. McCollum, 558 U.S. 30, 41-43, 130 S.Ct. 447, 454-55, 175 L.Ed.2d 398 (2009) (considering evidence of defendant’s “brain abnormality and cognitive defects” as relevant mitigation); Williams v. Taylor, 529 U.S. 362, 398, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000) (“[T]he graphic description of Williams’[s] childhood, filled with abuse and privation ... might well have influenced the jury’s appraisal of his moral culpability.”); Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) (“[Evidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.” (quotation omitted)). Yet the jury who recommended that Mr. Krawczuk be put to death heard nothing in mitigation—not even a bare plea for mercy from trial counsel. Mr. Krawczuk’s lawyer spoke not a word to the jury about what penalty to impose. At the Spencer hearing before the trial judge,[4] counsel again offered no mitigating evidencé or argument. That meant all the sentencing judge had to aid him in arriving at the sentence for Mr. Krawczuk was the presentence investigation report and a seven-page report from Dr. Richard Keown, who was the psychiatrist who conducted a pretrial competency evaluation. The psychiatric report referred to Mr. Krawczuk’s abusive upbringing, but—as the state postconviction court found—it did not “contain the quality of the evidence regarding his mother’s abuse that was later brought out in the evidentia-ry hearing.” Thus, this is not a case where the new mitigation evidence “would barely have altered the [defendant’s] sentencing profile.” Strickland, 466 U.S. at 700, 104 S.Ct. at 2071. Under Florida law at the time, the trial judge was required to give the jury’s advisory verdict on the sentence “great weight.” See Hurst v. Florida, 577 U.S. -, 136 S.Ct. 616, 620, 193 L.Ed.2d 504 (2016) (quotation omitted).[5] At trial, the jury heard nothing that would humanize Mr. Krawczuk or help put into context the horrible crime he committed. If the available mitigation had been presented, the jury would have learned of “the kind of troubled history [the Supreme Court] ha[s] declared relevant to assessing a defendant’s moral culpability.” Wiggins v. Smith, 539 U.S. 510, 535, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003). It would have also learned of Mr. Krawczuk’s brain damage- and mental problems. I recognize that Mr. Krawczuk committed a terrible crime. But if the jury had heard the available mitigating evidence, there is surely a reasonable probability that it would have recommended a life sentence. See Porter, 558 U.S. at 41-44, 130 S.Ct. at 453-55 (considering the probable effect of the un-presented mitigation on the jury’s recommended sentence). This recommendation would have been entitled to “great weight” by the sentencing judge, who would have also heard the true extent of the abuse Mr. Krawczuk suffered throughout his childhood and learned of his mental impairments. On this record, I believe Mr. Krawczuk has demonstrated a reasonable probability of a different outcome. Because the majority and I come to a different conclusion on the issue of whether Mr. Krawczuk was prejudiced by having no mitigation case presented, I cannot join its opinion. As to whether Mr. Krawczuk can prevail in this appeal, however, I must agree with the majority that he cannot. . I have some doubt that the Florida Supreme Court’s decision warrants deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA”), 28 U.S.C. § 2254(d). The Florida Supreme Court based its decision—at least in part—on Mr. Krawczuk’s "repeated[] instist[ence] that counsel not pursue mitigation and not involve his family.” Krawczuk v. State, 92 So.3d 195, 205 (Fla. 2012). My review of the record has revealed no evidence that Mr. Krawczuk instructed counsel not to involve his family. The most compelling evidence to this effect is trial counsel’s testimony at the post-conviction hearing that Mr. Kraw-czuk "kind of wanted to leave his family out of it." My doubts make no difference to Mr. Krawczuk, however. Even if we set aside the Florida Supreme Court decision and conduct our own de novo review of his claims, Mr. Krawczuk still would not, in my view, win this appeal. . Of course, saying a rule established by our Court is consistent with Supreme Court precedent is different from saying that the rule is required by Supreme Court precedent. I fear the majority treats Gilreath's two-part prejudice standard as being required under Landri-gan in every case where a defendant tells his lawyer he does not want to present mitigation. See Maj. Op. at 1294, 1295. The Supreme Court’s decision in Landrigan was not so broad. Mr. Landrigan actively interfered with his counsel’s efforts to present mitigation by "repeatedly [interrupting] when counsel tried to proffer anything that could have been considered mitigating,” regardless of its form. Landrigan, 550 U.S. at 476, 127 S.Ct. at 1941 (emphasis added). Applying AEDPA’s deferential standard of review, the Supreme Court decided that the state court reasonably determined “that Landrigan would have undermined the presentation of any mitigating evidence that his attorney might have uncovered.” Id. at 477, 127 S.Ct. at 1941. Thus the Supreme Court held, in turn, that the District Court did not abuse its discretion when it found that Mr. Landrigan would have refused to allow his counsel to present any mitigation whatsoever and for that reason failed to show prejudice. Id. at 477, 127 S.Ct. at 1942. Landrigan did not, however, establish a rule that if any defendant tells his lawyer he wants no mitigation presented, he can never show prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), unless he satisfies the two-part test required under Gilreath. See Blystone v. Horn, 664 F.3d 397, 424-26 (3d Cir. 2011) (limiting Landrigan to cases where the defendant has demonstrated a strong determination not to present any mitigating evidence, and concluding ”[t]he fact that [the defendant] chose to forego the presentation of his own testimony and that of [ ] two family members ... simply does not permit the inference that, had counsel competently investigated and developed expert mental health evidence and institutional records, [the defendant] would have also declined their presentation”). To the extent that the majority's opinion equates the requirements of our circuit’s precedent with that of the Supreme Court’s precedent, I believe it is mistaken. I also disagree with the majority’s suggestion that trial counsel’s duty to perform a constitutionally adequate mitigation investigation is obviated by a defendant's communication to his attorney that he does not wish to present mitigation. See Maj. Op. at 1288-89. Landrigan never addressed the performance prong of Strickland, and so it did nothing to alter trial counsel's perennial "obligation to conduct a thorough investigation of the defendant's background.” Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000). Again however, even setting these problems aside, I don’t believe Mr. Krawczuk can prevail in this appeal. . In reviewing the record in this case, I became troubled by an issue relatéd to Mr. ' Krawezuk’s failure to present a- mitigation case, which is not before the court in this appeal. There is an indication that Mr. Kraw-ezuk' may have been misguided by his trial counsel's statements; to think that , he would only be allowed to present , mitigation evidence if he agreed to. testify. In a letter dated .March 8, 1991, counsel advised Mr, Kraw-ezuk on what she believed were potential mitigating fáctors, and. wrote that some of the mitigation "will depend upon your testimony at trial arid the 'findings of Dr. Keown,” Then at the jury trial on penalty, when the trial judge asked if counsel would be making a closing argument, she replied that no rnitigat-ing .evidence had been presented and so "it would be necessary for ■ [Mr. Krawezuk] to take the stand to present the mitigating evidence” in order for her to make an argument based on mitigation. There is, of course, no requirement under state or federal law that a defendant must testify in order to present mitigation evidence in his capital trial. Therefore, if trial counsel improperly indicated to Mr. Krawezuk that he was required to testify at the penalty phase in order to introduce mitigation, this would constitute deficient performance. See Hinton v. Alabama, 571 U.S. -, 134 S.Ct. 1081, 1089, 188 L.Ed.2d 1 (2014) ("An attorney's igno-rqnce. of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland."). . . Under Florida law, a Spencer hearing gives the defendant, his counsel, and the State &e opportunity to be heard and to present additional evidence to the sentencing judge after the jury has offered its recommendation. See Spencer v. State, 615 So.2d 688, 691 (Fla. 1993) (per curiam). . Florida has since amended its capital sentencing scheme, and the Florida Supreme Court has held that "in order for the trial court to impose a sentence of death, the jury’s recommended sentence of death must be unanimous.” Hurst v. State, 202 So.3d 40, 44 (Fla. 2016) (per curiam).