[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-14857

————————————————

D.C. Docket No. 5:15-cv-00354-WTH-PRL

LUTHER MCKIVER,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, ATTORNEY GENERAL,
STATE OF FLORIDA,

Respondents-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(March 25, 2021)

Before MARTIN, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

After a Florida jury convicted Luther McKiver of trafficking oxycodone, a

state postconviction court granted McKiver a new trial based on allegations that his

trial counsel was ineffective. But McKiver's success was short-lived. The state appealed, and an appellate court reversed in a one-sentence order. Eventually, McKiver filed a federal habeas petition that argued his trial counsel was ineffective for failing to investigate and present (1) certain witnesses who would cast doubt on the state's case and (2) the criminal history of a key state witness. The district court denied McKiver's petition, and McKiver appealed.

McKiver's appeal requires us to answer two questions. First, we must determine whether the state appellate court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting the witness-testimony claim. Second, we must decide whether we may excuse McKiver's procedural default of his criminal-history claim under *Martinez v. Ryan*, 566 U.S. 1 (2012). We conclude that the state appellate court did not unreasonably apply *Strickland* in rejecting the witness-testimony claim and that McKiver cannot surmount the procedural default of his criminal-history claim. Accordingly, after careful consideration and with the benefit of oral argument, we affirm the district court's denial of McKiver's petition.

## I. BACKGROUND

The factual and procedural history of this case consists of four parts: McKiver's crime, his trial proceedings, his postconviction proceedings, and the parties' subsequent appeals and petitions.

*A. McKiver's Crime*

2

One Friday in 2008, John Sneed filled three prescriptions for his back injury, including one for 120 oxycodone pills. The next day, Sneed took six to eight of those pills. He went out of town for the rest of the weekend and left the pill bottle behind in his locked house. When he returned to his house on Sunday, he found that it had been broken into and that his prescriptions were missing. Sneed notified law enforcement of the break-in, and a detective was sent to investigate.

During the investigation, the detective interviewed Luther McKiver, who lived across the street from Sneed. McKiver initially denied breaking into Sneed's house, stealing the prescriptions, and using drugs, except "a little weed every now and then." He also said that he had been away from his house on Saturday and did not return until Sunday evening. He further alleged that the Sneeds were targeting him for being "the only dark-colored skin in the neighborhood." When questioned further about this statement, McKiver started becoming less coherent and possibly angry, and the detective ended the interview.

However, just fifteen minutes later, the detective conducted another interview with McKiver. In this second interview, McKiver confessed that he "lied on the first one because [he] was afraid" and admitted that he had broken into Sneed's house, had stolen the pills, and had a drug-use problem. He specifically admitted that he stole "prescription bottles full of medicine" and consumed the medicine in the bottles. The police never recovered any pill bottles or pills.

3

McKiver was eventually charged with burglary, grand theft, and trafficking oxycodone in an amount of 28 grams or more. He pleaded guilty to the burglary and grand theft charges but went to trial on the trafficking charge. Under Florida law at the time, unauthorized possession of 28 grams or more of oxycodone was the crime of trafficking and carried a mandatory 25-year term of imprisonment. FLA. STAT. §§ 893.03(2)(a) and 893.135(1)(c). Because McKiver admitted to stealing Sneed's oxycodone pills, the only question at trial was whether there were 28 grams or more of oxycodone in the bottle. And because each pill in the bottle weighed 530 milligrams, the issue became whether McKiver stole 53 pills or more.

### B. McKiver's Trial Proceedings

At some point, the parties became aware that Sneed might have a criminal history or may have engaged in criminal conduct, and the state moved the trial court to exclude any evidence of Sneed allegedly selling or trading narcotics as improper character evidence. After conferring with his client off the record, McKiver's trial counsel, Michael Lamberti, consented to the motion as long as the state was not allowed to introduce evidence that McKiver had taken Sneed's pills in the past. The court agreed and excluded that evidence. The court concluded the hearing by asking McKiver directly: "Are you satisfied with [Lamberti's] services thus far?" McKiver replied: "Yes, Your Honor." The court further asked: "Is there anything that he hasn't done that you have asked him to do?" McKiver answered: "No, Your Honor."

4

At trial, only four witnesses testified: Sneed, the pharmacist who had filled his prescription, the detective, and McKiver. Sneed and the detective testified to the facts described above, and recordings of McKiver's two interviews with the detective were played for the jury. The pharmacist testified that he had carefully counted and filled Sneed's bottle with 120 oxycodone pills two days before the break-in at Sneed's house. When McKiver testified, he "admit[ted] [his] guilt for breaking into the house" and taking Sneed's drugs. Although he recalled seeing pills in Sneed's oxycodone bottle, he could not remember how many he had taken because he was already "too high" at the time.

The jury convicted McKiver of trafficking oxycodone in an amount of 28 grams or more, and the judge sentenced him to a mandatory 25-year term of imprisonment. McKiver appealed his conviction and sentence, which the state appellate court affirmed.

### C. McKiver's Postconviction Proceedings

McKiver filed a *pro se* state postconviction petition arguing that his trial counsel, Lamberti, was ineffective for several reasons. As relevant here, McKiver alleged that Lamberti disregarded his request to investigate and call four witnesses who would have testified that Sneed sold drugs, which in turn would cast doubt on whether Sneed's pill bottle was full when McKiver stole it. The state postconviction court appointed counsel for McKiver and ordered an evidentiary hearing. Almost

immediately after being appointed, McKiver's postconviction counsel requested Sneed's criminal history. When the request was made, McKiver still had almost seven months to amend his petition.

At the hearing, three witnesses testified: Lamberti, McKiver, and the prosecutor. Only Lamberti's and McKiver's testimonies are relevant to this appeal.

To begin, Lamberti testified—and his contemporaneous notes confirmed—that McKiver had given him the names of only two witnesses, neither of which were mentioned in McKiver's petition. Lamberti explained that he decided not to investigate those witnesses because McKiver had admitted multiple times that Sneed's oxycodone bottle was "almost full when [McKiver] took" the pills. Indeed, he testified that McKiver told him in the off-the-record conversation at the motion-in-limine hearing that calling witnesses to testify about Sneed's drug-selling history "would be a waste of time" because he had "taken the whole, entire[,] . . . just-about-full bottle of pills." Lamberti also testified that McKiver never told him that the proposed witnesses knew that Sneed had sold oxycodone pills in the 48-hour period between the filling of the prescription and the break-in. Lamberti explained that the trial strategy—which McKiver accepted—was to argue that McKiver took only a small handful of pills before leaving Sneed's house and that someone else may have later entered the open house and taken the remaining pills.

Next, McKiver testified. First, McKiver testified that he had suggested seven

witnesses to Lamberti and that he had told him that four of them would testify that Sneed had sold them oxycodone pills within 48 hours of filling his prescription. But McKiver's petition mentioned only four witnesses—one of whom was Sneed's wife—and never mentioned anyone purchasing oxycodone within the relevant 48-hour timeframe. Second, McKiver answered a series of yes-or-no questions about whether his proposed witnesses would have been available and willing to testify at the time of his trial. He asserted that the witnesses were available and willing to testify that they had purchased pills from Sneed in the days leading up to the break-in. Third, McKiver testified that he had always told Lamberti that the bottle contained very few pills. He also testified that at least one of his suggested witnesses would have been able to tell the jury how many pills were in the bottle.

The postconviction court granted McKiver's petition. It noted that neither the pharmacist nor Sneed could "confirm the exact contents of the bottle." Accordingly, it concluded that "[t]he witnesses contemplated by Defendant would have challenged the testimony of State's witnesses and provided reasonable doubt as to the quantity for trafficking."

### D. The Parties' Subsequent Appeals and Petitions

The state appealed the postconviction court's order on the ground that it was not "supported by competent substantial evidence." The state appellate court reversed the postconviction court. In a brief order, it quoted from the standard for an

ineffective assistance claim and wrote "We conclude that [McKiver] failed to meet his burden of establishing either prong under *Strickland* and therefore vacate the order under review and order that the judgment and sentence be reinstated."

About two years later, McKiver filed a second state postconviction petition. The petition asserted that Lamberti had been ineffective for failing to investigate Sneed's criminal history and impeach him with a 35-year-old conviction for selling marijuana and a 26-year-old conviction for issuing worthless checks, both of which were punished with probation. The reviewing court denied the petition because McKiver had not filed it within the two-year statute of limitations. McKiver appealed the denial, which the state appellate court affirmed. *See generally McKiver v. State*, 187 So.3d 1262 (Fla. Dist. Ct. App. 2016).

McKiver then filed a federal habeas petition raising both the witness-testimony claim and the criminal-history claim. McKiver also submitted several affidavits in support of his federal habeas petition that he had not submitted to a state postconviction court. The district court denied the petition. It held that (1) the state appellate court was not unreasonable in rejecting McKiver's witness-testimony claim, and (2) McKiver's procedurally defaulted criminal-history claim was not subject to an exception under *Martinez v. Ryan*, 566 U.S. 1 (2012), and failed on the merits anyway.

We granted a certificate of appealability on two issues: (1) whether the district

8

court erred in determining that the state appellate court's rejection of the witness-testimony claim was not contrary to, or an unreasonable application of, *Strickland*; and (2) whether the district court erred in determining that McKiver's criminal-history claim was not "substantial" under *Martinez* such that its procedural default could not be excused.

## II. STANDARD OF REVIEW

We review *de novo* a district court's denial of a Section 2254 petition for a writ of habeas corpus. *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1262 (11th Cir. 2020). Mixed questions of law and fact are also reviewed *de novo*, but the district court's factual findings are reviewed for clear error. *See Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 794 (11th Cir. 2020) (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 n.9 (11th Cir. 2011)). Whether a claim is procedurally defaulted is a mixed question of law and fact and is therefore reviewed *de novo*. *See Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).

Although we review the district court's denial *de novo*, we review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Jenkins*, 963 F.3d at 1262–63 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). Under AEDPA, a court cannot grant relief unless the state court's decision on the merits was "contrary to, or involved an unreasonable application of," Supreme Court precedent, or "was based on an

9

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A decision is contrary to Supreme Court precedent if the state court applied a rule contradicting the governing law provided by the Supreme Court or reached a different result from the Supreme Court when faced with materially indistinguishable facts. *See Tuomi*, 980 F.3d at 794–95 (quoting *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010)). And a decision involves an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner. *See id.* at 795 (citing *Brown v. Payton*, 544 U.S. 133, 141 (2005)). To be objectively unreasonable, the decision must be more than merely incorrect or erroneous—it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 795 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). For this reason, a state court's determinations are unreasonable only if no fairminded jurist could agree with them. *See Raulerson v. Warden*, 928 F.3d 987, 995 (11th Cir. 2019), *cert. denied*, 140 S.Ct. 2568 (2020).

### III. DISCUSSION

McKiver presents two claims for our review: his witness-testimony claim and his criminal-history claim. His witness-testimony claim asserts that his trial counsel,

Lamberti, was ineffective because he failed to investigate and call certain witnesses. His criminal-history claim asserts that Lamberti was ineffective because he failed to investigate Sneed's criminal history and impeach him at trial. We address each claim in turn.

### A. The State Appellate Court's Decision to Deny McKiver's Witness-Testimony Claim Did Not Unreasonably Apply Strickland

We begin with McKiver's witness-testimony claim. The state appellate court reversed the state postconviction court and denied McKiver's witness-testimony claim with one substantive sentence: "We conclude that Appellee failed to meet his burden of establishing either prong under *Strickland*." McKiver argues that the state appellate court "identified the correct legal rule"—the rule in *Strickland v. Washington*, 466 U.S. 668 (1984)—"but unreasonably applied that rule to the facts."

As an initial matter, we must decide how to review the state court's one-sentence order. With one quibble,[1] McKiver concedes that the state appellate court denied his claims "on the merits" such that AEDPA applies. *See* 28 U.S.C. § 2254(d).

---

[1] In his reply brief, McKiver argues that the state appellate court should have treated his witness-testimony claim as two separate claims: a claim about Lamberti's failure to investigate certain witnesses and a claim about his failure to call those witnesses at trial. This argument fails for three reasons. First, arguments raised for the first time in a party's reply brief are waived. *See Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Second, McKiver framed these issues as a single claim before the state appellate court and cannot fault the state court for doing the same thing. Third, under the facts of this case, there is no meaningful difference in treating these assertions as a single claim because McKiver does not argue that his counsel should have investigated these witnesses for some purpose other than calling them to testify.

11

We agree. Although the state appellate court's decision was brief, it clearly disposed of the witness-testimony claim on the merits and not on procedural or jurisdictional grounds. Because the state court resolved the claim on the merits, AEDPA governs our review. *See Raulerson*, 928 F.3d at 995 (11th Cir. 2019).

Moreover, we cannot say that the state appellate court's ruling was a summary or unexplained disposition of the claim. Under *Strickland*, a petitioner making an ineffective-assistance-of-counsel claim must show both that (1) his counsel performed deficiently and (2) the deficient performance prejudiced his defense. *See* 466 U.S. at 687. Unlike a summary disposition, which gives no reason for a decision, the state appellate court explained why it reversed the postconviction court's order: McKiver had not met his burden of proof under either prong of the relevant test. In applying AEDPA, we must determine whether any fairminded jurist could agree with that assessment. *See Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018) (stating that when a state court explains its decision, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable").

We believe that fairminded jurists could agree that McKiver's evidentiary presentation failed to establish that he met *Strickland*'s test, especially with respect to its prejudice prong. Because both prongs of the test must be satisfied, a court need not address one prong if the petitioner cannot satisfy the other. *See Reaves v. Sec'y,*

12

*Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017) (quoting *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). Indeed, the Supreme Court has explained that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [it] expect[s] will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. To establish prejudice, a petitioner must show that there is a reasonable probability that the result of the proceeding would have been different if his counsel had not performed deficiently—a showing sufficient to undermine confidence in the outcome of the proceeding. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

We have explained that this burden is particularly "heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (internal quotation marks omitted) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)); *see also Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) ("Claims that counsel failed to call witnesses are not favored on federal habeas review because . . . speculation about what witnesses would have said on the stand is too uncertain."). And, for that reason, we have held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to

13

interview or call that witness. *See Sullivan,* 459 F.3d at 1109; *Washington v. Watkins,* 655 F.2d 1346, 1364 (5th Cir. 1981) ("All we have is what (the petitioner) says they would have said. . . . [A]ny inadequacy in [the petitioner's] representation that is attributable to his failure to interview [certain nontestifying witnesses] must be deemed completely nonprejudicial . . . given his utter failure to establish at his federal habeas hearing that the nontestifying [witnesses] would have corroborated [his] alibi defense."); *Guerra,* 628 F.2d at 413 (denying an ineffective assistance claim because "[n]one of the alleged witnesses were called at the § 2255 hearing and no one knows what they would have testified to"). Other circuits have come to a similar conclusion. *See Woodfox,* 609 F.3d at 808 (holding that a petitioner must, among other things, demonstrate "that the witness was available to testify and would have done so"); *Sanders v. Trickey,* 875 F.2d 205, 210 (8th Cir. 1989) ("Appellant's claim also must fail because he has not shown how he was prejudiced" because he "produced no affidavit or testimony from [the witness] to the effect that she would have testified at trial that appellant was innocent.").

We cannot say that the state appellate court was unreasonable in concluding that McKiver failed to carry his evidentiary burden to establish prejudice. At his evidentiary hearing before the postconviction court, McKiver—who was represented by counsel—did not call or submit written testimony from any of the witnesses who he argues that Lamberti should have investigated and called at trial.

14

The only evidence before the state appellate court was McKiver's own conclusory testimony about what the witnesses would have said and whether they would have been available and willing to testify. This testimony is precisely the kind of evidence that we—and other courts—have held to be "simply inadequate to undermine confidence in the outcome" of the proceeding. *Sanders*, 875 F.2d at 210 (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 694).

Especially considering the particular facts of this case, a reasonable jurist could conclude that McKiver's testimony alone failed to establish prejudice. McKiver's testimony at the evidentiary hearing was inconsistent with what he had said on the record at the motion-in-limine hearing—that he was satisfied with his counsel's decision not to present evidence about Sneed's alleged criminal conduct. And, because the state needed to prove only that McKiver stole 53 of Sneed's original 120 pills, the missing witnesses had to account for at least half of the bottle's contents to have affected the result. But, for all the state courts knew, McKiver's witnesses might have testified to seeing a high enough number of pills to support the state's case, not undermine it. For example, McKiver said one witness would "testify as to how many pills or approximately how many pills were actually in that oxycodone bottle," but McKiver never said what he expected that number of pills to be. Because these witnesses never testified, the state court did not know what they would have said about the only issue at trial. Under AEDPA, we cannot fault the

15

state appellate court for rejecting McKiver's witness-testimony claim for failing to meet his burden of proof.

McKiver argues that the state courts were obliged to accept his testimony at the evidentiary hearing because the state did not object to its admissibility. But this argument confuses admissibility with sufficiency. The admissibility of evidence and the sufficiency of that evidence are two different propositions. *See, e.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564–65 (11th Cir. 1998) (holding that courts should avoid "the confusion and conflation of admissibility issues with issues regarding the sufficiency of [a party's] evidence"). The issue here is not the admissibility of McKiver's testimony under the rules of evidence; the issue is the sufficiency of that testimony to meet his burden of proof under *Strickland*. The state argues, and our caselaw establishes, that speculative testimony like McKiver's—about what another person would have said and his or her availability and willingness to say it—may not be sufficient by itself to establish prejudice, regardless of its admissibility.

McKiver also argues that we should consider the affidavits that he submitted to the district court. But we cannot consider evidence that was not presented to the state courts. Under AEDPA, our "review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). It would contravene AEDPA "to allow a petitioner to overcome

16

an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*." *Id*. at 182. *See also Pope v. Sec'y, Fla. Dep't of Corrs.*, 752 F.3d 1254, 1263 (11th Cir. 2014). Accordingly, we are limited to reviewing the reasonableness of the state appellate court's decision based on the record that McKiver made in state court.

Although the state appellate court's decision rejecting McKiver's witness-testimony claim was brief, it did not unreasonably apply *Strickland*. Consequently, the district court did not err in denying McKiver's Section 2254 petition with respect to his witness-testimony claim.

Our dissenting colleague sees things differently and makes at least three significant errors in doing so. First, she focuses her review on the state postconviction court instead of the state appellate court. Under AEDPA, we must evaluate the state appellate court's decision, not the decision of the lower court that it reversed and vacated. *See Wilson*, 138 S.Ct. at 1191–92. In another context, we have explained that a vacated opinion is "officially gone" and has "no legal effect whatever," and "[n]one of the statements made [therein] has any remaining force." *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002); *see also United States v. M.C.C. of Fla., Inc.*, 967 F.2d 1559, 1561 (11th Cir. 1992) ("[G]eneral vacation by an appellate court of the lower court's judgment vacates the entire judgment below, divesting the lower court's earlier judgment of its binding

effect"). Second, our dissenting colleague asserts that the state postconviction court found McKiver's testimony to be credible and that the state appellate court adopted that finding. But the state postconviction court never made a credibility determination of any kind and expressly relied on the lawyer's testimony, not McKiver's. *See* Doc. 10-6 at 46 ("Mr. Lamberti testified that although Defendant provided the names of witnesses and their expected testimony he did not investigate or interview the witnesses or seek a continuance to investigate."). For its part, the state appellate court did not adopt—implicitly or expressly—anything that the state postconviction court said or did. The state appealed on the grounds that McKiver had not proven his claims by substantial evidence, and the appellate court reversed because it concluded that McKiver "failed to meet his burden." Third, our dissenting colleague makes much of the implausibility of McKiver "ingest[ing] over 100 oxycodone pills in a 48-hour period and somehow surviv[ing]." But nothing in the state-court record—not even his own testimony at trial or the post-conviction hearing—suggests that McKiver consumed the stolen pills in two days. The police interviewed McKiver ten days after the burglary, at which point he said that he had ingested the pills. Our dissenting colleague's only support for this assertion is a sentence in McKiver's federal habeas petition, which is not evidence of anything and was not before the state courts in any event.

18

### B. McKiver's Criminal-History Claim Was Procedurally Defaulted

We turn now to McKiver's criminal-history claim. McKiver alleges that Lamberti was ineffective because he failed to investigate Sneed's criminal history such that he could impeach Sneed at trial with a 35-year-old conviction for selling marijuana and a 26-year-old conviction for issuing worthless checks. Both parties agree that this claim is procedurally defaulted because McKiver did not timely raise it in the state courts.

Ordinarily, a state procedural default is fatal to a federal habeas claim. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (describing "the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule"). But there is a narrow exception. If a petitioner can show cause for the default and establish prejudice resulting from the alleged violation of federal law, then the default will be excused, and federal courts can hear the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As relevant here, a petitioner can establish cause for defaulting on a claim of ineffective assistance of trial counsel where four conditions are met: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the claim was defaulted because the petitioner had "no counsel" or "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review

19

proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423, 428 (2013).

McKiver argues that his procedural default may be forgiven under this four-factor test. The state disputes only the first and second factors.

Under the first factor, to show that an underlying ineffective-assistance-of-counsel claim is "substantial," a petitioner must establish that "jurists of reason would find it debatable." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Consequently, McKiver must prove that such jurists would find it debatable that (1) Lamberti performed deficiently by failing to investigate Sneed's criminal history and then use it to impeach Sneed and (2) that those failures prejudiced his defense. *See Strickland*, 466 U.S. at 687.

As for the second factor, McKiver must show that his postconviction counsel was ineffective for failing to raise this claim in his postconviction proceeding. Although McKiver filed his first state postconviction petition *pro se*, the postconviction court appointed counsel almost seven months before the deadline for amending his petition and before the evidentiary hearing. In such cases where counsel is appointed while there is still opportunity to include a claim in a state

postconviction petition, counsel exists for purposes of the *Martinez* "cause" analysis, and a petitioner must prove his postconviction counsel's ineffectiveness to excuse a state procedural default. *See Martinez*, 566 U.S. at 14–15. To make that showing, McKiver must prove that his postconviction counsel performed deficiently and that the deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687.

Under the facts of this case, both factors come down to a single question: whether there is a substantial likelihood that the result of McKiver's trial would have been different if his trial counsel had raised Sneed's criminal history for the purposes of impeachment? We need not address the adequacy of any lawyer's performance— neither his trial counsel's failure to investigate nor his postconviction counsel's failure to raise the claim—because even assuming that both lawyers performed deficiently, neither lawyer's performance prejudiced McKiver. This is so for three reasons.

First, even if Lamberti had tried to present Sneed's criminal history, the jury would not have been able to hear it, which is a necessary precondition for this kind of ineffective assistance of counsel claim.[2] In Florida, when deciding whether to

---

[2] *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1362 (11th Cir. 2004) (reasoning that the unavailability of certain uninvestigated evidence "could not have affected the result of the case so as to create prejudice" because "[a] reasonable probability of a different result is possible only if the suppressed information is itself admissible evidence or would have led to admissible evidence"); *Gilreath v. Head*, 234 F.3d 547, 551 n.12 (11th Cir. 2000) ("[T]o show prejudice, Petitioner must show that—but for his counsel's supposedly unreasonable conduct—helpful character evidence actually would have been heard by the jury."); *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir. 1994) ("The result of Spaziano's trial and sentencing would not have been

admit evidence of past convictions for impeachment purposes, courts must "determine whether the past convictions have a bearing on the present character of the witness." *Trowell v. J.C. Penney Co.*, 813 So.2d 1042, 1044 (Fla. Dist. Ct. App. 2002).[3] A conviction "so remote in time as to have no bearing on the present character of the witness" is inadmissible. *Children's Palace, Inc. v. Johnson*, 609 So.2d 755, 757 (Fla. Dist. Ct. App. 1992) (citing FLA. STAT. § 90.610). "[T]he absence of similar conduct for an extensive period of time might suggest that the conduct is no longer characteristic of the defendant." *Duffey v. State*, 741 So.2d 1192, 1197 (Fla. Dist. Ct. App. 1999). Florida courts have held that older convictions likely do not bear on the witness's present character if there has been a significant period without subsequent convictions. *See, e.g.*, *Trowell*, 813 So.2d at 1044 (finding that "[e]vidence of theft and shoplifting convictions" almost two decades old "with no subsequent convictions would tend to suggest that the witness no longer has a propensity toward dishonesty, and thus such convictions would have little or no bearing on his present character"); *cf. Pryor v. State*, 855 So.2d 134, 137 (Fla. Dist. Ct. App. 2003) (holding that the continued acquisition of felony convictions caused the older ones to "bear[] on his present character" and be "admissible for

---

different, because the information in question is not admissible evidence, and it would not have led to any admissible evidence.").

[3] "[I]n the absence of interdistrict conflict, district court decisions bind *all* Florida trial courts." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (emphasis added).

impeachment").

Applying Florida law to the facts in this case, there is no reason to believe that Sneed's criminal history would have been admitted at McKiver's trial. Sneed's criminal history consists of a 35-year-old conviction for selling marijuana and a 26-year-old conviction for issuing worthless checks. Sneed had not been convicted of a felony for 26 years. Consequently, Florida law did not support admitting these convictions for impeachment purposes. In analogous cases, Florida courts have affirmed trial courts' refusal to allow convictions like these to be used for impeachment. *See Jones v. State*, 765 So.2d 767, 767–68 (Fla. Dist. Ct. App. 2000) (affirming the trial court's discretion in refusing to admit a nearly 30-year-old conviction); *City of Miami v. Ross*, 695 So.2d 486, 488 (Fla. Dist. Ct. App. 1997) (concluding that the trial court did not abuse its discretion by refusing to allow impeachment with convictions for writing bad checks from "many years ago").

McKiver cites one Florida case—*Riechmann v. State*, 581 So.2d 133 (Fla. 1991)—in support of his prejudice argument, but that case is clearly distinguishable. In *Reichmann*, the defendant testified and had three potentially admissible prior convictions that were 21-, 14-, and 13-years-old, 581 So.2d at 135, 139, 140, and one of those convictions was for perjury, *id.* at 139. In reviewing the trial court's decision to allow impeachment on the basis of those convictions, the Florida Supreme Court noted that the "remoteness of prior convictions may create a danger

23

of unfair prejudice substantially outweighing the probative value of the evidence."
*Id.* at 140. But in that case, it ultimately concluded that the trial court had not abused
its discretion in admitting the impeachment evidence. *Id.* Here, of course, the witness
is not the person on trial, his convictions are significantly more remote, and none of
them is for perjury. *See Ward v. State*, 343 So.2d 77, 78 (Fla. Dist. Ct. App. 1977)
("[W]e think perjury falls in a special category. Such a conviction has greater weight
against the credibility of a witness than any other crime.").

Second, even if the trial court had admitted Sneed's criminal history, there is
no reasonable probability that the outcome of the trial would have been different. To
begin, if Sneed's criminal history had been admitted, the precise nature of Sneed's
crimes would not have been available to the jury. *See Jackson v. State*, 25 So.3d 518,
526 (Fla. 2009) ("This inquiry [into a witness's convictions] is generally restricted
to the existence of prior convictions and the number of convictions, unless the
witness answers untruthfully."); *Howard v. Risch*, 959 So.2d 308, 313 (Fla. Dist. Ct.
App. 2007) ("Although the fact a witness or party was convicted of a crime may be
relevant and admissible for impeachment purposes, the nature of the crime or any
details about the crime are generally inadmissible."). Hence, the jury would have
learned only that Sneed had two prior felonies 35 and 26 years before the trial and
perhaps that he received probation for both.

McKiver argues that Sneed's criminal history would have been enough to

24

affect the outcome of the trial because "[t]here was only a single, unimpeached witness, who testified about the number of pills: Mr. Sneed." He further asserts that if "Mr. Sneed was suddenly a convicted felon" in the eyes of the jurors, the "scales [of credibility] would have been evenly distributed and the jury would have been required to review the evidence more equally." But neither assertion is true. Sneed was not the only witness who testified to the number of oxycodone pills in the bottle: McKiver concedes that the pharmacist also testified to the number of pills. And learning of Sneed's convictions would not have equalized McKiver's and Sneed's credibility in the eyes of the jury. The jury had heard McKiver repeatedly and elaborately lie to the detective in his first interview—which the jury heard him admit at the start of the second interview. McKiver's assertion that the jury would have found him and Sneed to be equally credible if it had learned of Sneed's decades-old convictions is without merit.

Third, only a substantial deviation in the number of pills would have changed the trial's outcome. Sneed testified that he consumed six to eight pills, leaving more than 110 in the bottle. To convict McKiver of trafficking oxycodone, the state simply had to show that the bottle contained at least 53 pills when he took it. To change the result, the jury would have needed to believe that Sneed's estimation of the number of pills left in the bottle was more than double the actual number of pills that he had. But McKiver does not explain how undermining Sneed's credibility with felony

25

convictions would have helped him show this kind of discrepancy.

For these reasons, there is no reasonable probability that McKiver's trial would have reached a different conclusion if his trial counsel had investigated Sneed's criminal history. Moreover, jurists of reason would not find this conclusion debatable: the cumulative strength of the foregoing reasons is simply too great. We therefore conclude that McKiver cannot establish that his criminal-history claim is "substantial" and that his postconviction counsel was ineffective for not raising it. Under *Martinez*, the procedural default is not excused, and we cannot reach the claim. Consequently, the district court did not err in denying McKiver's Section 2254 petition with respect to his criminal-history claim.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of McKiver's Section 2254 petition.

26

MARTIN, Circuit Judge, concurring in part and dissenting in part:

Luther McKiver is now serving a mandatory 25-year sentence for a crime he committed shortly after he graduated high school. He admitted to stealing oxycodone pills from his neighbor, John Sneed. But Mr. McKiver says, and the state never disputed, that he consumed those oxycodone pills within 48 hours of acquiring them. For this crime, the state of Florida charged Mr. McKiver with the quite serious crime of trafficking oxycodone, which requires a sentence of no less than 25 years in prison. Without that charge, Mr. McKiver would have still served a still serious sentence of almost eight years' imprisonment for the crimes to which he pled guilty. Under Florida's statutory scheme, a person does not actually have to traffic drugs in order to be guilty of trafficking. A person's guilt or innocence of Florida's drug trafficking crime is determined strictly by the weight of the drug attributed to them.[1] And in order for Mr. McKiver to be guilty of trafficking, a jury must have found that he possessed at least 28 grams (1 ounce) of oxycodone between the time he took the pills from Mr. Sneed's home and the time he consumed them. All parties seem to agree that it would take 53 oxycodone pills to meet the weight requirement of 28 grams set by Florida's drug trafficking statute.

Since Mr. McKiver admitted to taking the pills, the only real issue in dispute at his trial was whether the bottle he stole had at least 53 oxycodone pills in it.

---

[1] See § 893.135(1)(c)(1)(c) (2008).

27

And this appeal presents the question of whether Mr. McKiver's trial lawyer rendered ineffective assistance to McKiver in defending him on this point. In preparing for trial on this lone issue, Mr. McKiver told his attorney, Michael Lamberti, about several people who would testify (generally) that Mr. Sneed regularly sold the oxycodone Sneed kept in his house and (specifically) that Sneed even sold pills from the very bottle McKiver took before McKiver took it. Despite the obvious effect this testimony would have in undermining the government's claim that Mr. McKiver took at least 53 pills from Mr. Sneed, Mr. Lamberti never even attempted to contact any of the witnesses McKiver identified.

This appeal arises from Mr. McKiver's attempt to get a new trial on the ground that Mr. Lamberti gave ineffective assistance of counsel to him on this important issue of the weight of the drugs he consumed. The state postconviction court that heard Mr. McKiver's claims in this regard agreed with him. Nevertheless, and in a one sentence order, containing no analysis or any reference to the facts, the Florida appellate court vacated the state postconviction court's decision. Upon review here, the majority opinion says this one sentence order from the Florida appellate court is a reasonable application of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). I say it is not, so I respectfully

dissent.[2]

# I.

Mr. McKiver became addicted to prescription opioids prescribed for him after he had knee surgery during his high school years. In 2008, shortly after graduating from high school, Mr. McKiver lived with his grandparents across the street from Mr. Sneed. In December of that year, Mr. Sneed filled three prescriptions for opioids, including a bottle of 120 oxycodone pills. Mr. Sneed says he took only six to eight pills per day for personal use. Then, two days after Mr. Sneed filled that oxycodone prescription, Mr. McKiver broke into Mr. Sneed's home, already intoxicated, stole that bottle, and swallowed whatever pills were in it. The police never recovered the bottle or the pills.

At trial, Mr. McKiver confessed to taking the bottle, but testified that he could not recall how many pills were in it because he was high at the time. Mr. Sneed testified that he had only taken out six to eight pills, meaning that there would have been over 100 pills remaining in the bottle.[3] In October 2009, the trial

---

[2] I agree Mr. McKiver has not made the required showing to overcome his procedurally defaulted claim that he suffered ineffective assistance of counsel when Mr. Lamberti failed to investigate Mr. Sneed's criminal history.

[3] The government never offered any evidence to the contrary and so its theory therefore appears to be that Mr. McKiver ingested over 100 oxycodone pills in a 48-hour period and somehow survived. The majority opinion says Mr. McKiver never claimed that he consumed whatever pills soon after acquiring them, but it overlooks the record in this regard. Maj. Op. at 18. See R. Doc. 1 at 6–7 ("McKiver consumed all of the pills he took from Sneed's house that day in a forty-eight hour period. That there were few pills in the bottle is consistent with McKiver's

jury found Mr. McKiver guilty of trafficking more than 28 grams but less than 30 kilograms of oxycodone. As a result, Mr. McKiver is now serving the 25-year term of imprisonment required by Florida's trafficking statute.

In 2012, Mr. McKiver filed a pro se motion for post-conviction relief in the state trial court. Mr. McKiver argued, in relevant part, that he suffered ineffective assistance of counsel because his attorney, Mr. Lamberti, failed to interview witnesses who would have testified that Mr. Sneed sold his prescription opioids and that his wife, Mrs. Claudia Sneed, also took his drugs. This would have, of course, lessened the number of pills in the bottle at the time Mr. McKiver took it.

The state trial court held an evidentiary hearing which revealed important facts. First, Mr. McKiver provided Mr. Lamberti with the names of at least five witnesses who would have testified to Mr. Sneed's illegal drug activity: Daniel Pulkinan, Tyrone Thomas, Tracy Gates, Corey Denny, and Rodney Jones. Mr. McKiver further testified that two of them would have testified that Mr. Sneed sold oxycodone pills during the 48 hours between the time Sneed filled his prescription and the time McKiver stole the bottle of oxycodone. Second, Mr. Lamberti did not attempt to contact any of the witnesses Mr. McKiver indicated had exculpatory information. And finally, Mr. Lamberti's notes from his pre-trial conversations

---

statement that all of the pills were consumed by him in a two day period because one hundred twelve pills of percacet in a two day period would have been lethal.") Mr. McKiver so stated under penalty of perjury.

with Mr. McKiver indicate that McKiver told him he didn't know how many pills were in the bottle when he stole it.

The majority opinion correctly points out that Mr. Lamberti testified that Mr. McKiver told him the oxycodone bottle was almost full when McKiver took it. Maj. Op. at 6. But Mr. Lamberti's self-serving testimony was undermined by two other pieces of evidence. First, Mr. McKiver testified that when he referred to a full bottle of pills, he was talking about the other drugs he had taken from Mr. Sneed's home (and which he subsequently pled guilty to stealing) and that he always said there were very few pills remaining in the oxycodone bottle. Second, Mr. Lamberti's own notes indicate that Mr. McKiver told him he could not remember how many pills were in the bottle. We also know that when the state trial court heard this conflicting evidence it found that Mr. Lamberti's decision to not even try to contact the potential witnesses "cannot be attributed to strategic decision." This seems to be a perfectly reasonable finding based on my read of the evidence.

The state trial court found Mr. Lamberti's performance to be constitutionally deficient because he failed to investigate or interview any of the witnesses Mr. McKiver named. And it found that Mr. McKiver demonstrated prejudice because the "narrow issue at trial was the issue of quantity of drugs contained in the bottle" and the witnesses McKiver identified "would have challenged the testimony of

31

State's witnesses and provided reasonable doubt as to the quantity for trafficking."

On appeal, the Florida Fifth District Court of Appeal vacated the state postconviction court's decision in a one-sentence order simply saying that Mr. McKiver "failed to meet his burden of establishing either prong under Strickland." The state appellate court provided no analysis whatsoever.

In 2015, Mr. McKiver filed a habeas petition in the District Court, seeking to have his conviction vacated because he did not receive effective assistance of counsel. Mr. McKiver again argued Mr. Lamberti was deficient because he failed to interview or call the witnesses with knowledge of Mr. Sneed's illegal drug activity. Mr. McKiver provided the District Court with affidavits from the witnesses he says Mr. Lamberti should have called. Three of those witnesses swore they had personal knowledge that Mr. Sneed sold prescription drugs in the time between filling his prescription and Mr. McKiver stealing the oxycodone bottle. All four said they were available to testify during the trial and would have done so if someone had only asked.

In 2018, the District Court denied the petition. The District Court found that, even if the jury had heard the evidence about Mr. Sneed's drug activity, they still could have found that Mr. McKiver took the minimum number of pills to sustain his trafficking charge.

## II.

Upon reviewing a habeas claim previously adjudicated on the merits in state court, federal courts may grant relief only when the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  But the state court's factual findings are "presumed to be correct," and can only be overcome by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Mr. McKiver argues the state appellate court unreasonably applied Strickland to the facts of his case.  Strickland provides that a criminal defendant has been deprived of their Sixth Amendment right to counsel when: (1) counsel's performance was deficient, meaning their actions were not sound trial strategy and (2) counsel's deficiency prejudiced the defense, meaning there is a reasonable probability that but for the deficiency, the result of the proceeding would have been different.  King v. Strickland, 748 F.2d 1462, 1463 (11th Cir. 1984); Strickland, 466 U.S. at 687, 689, 693–94, 104 S. Ct. at 2064, 2065, 2068. "Reasonable probability" is not a stringent standard.  It means only a "probability sufficient to undermine confidence in the outcome."  King, 748 F.2d at 1463 (quotation marks omitted).  It is less than a preponderance of the evidence.  Agan v. Singletary, 12 F.3d 1012, 1018 (11th Cir. 1994).  Because the state appellate

33

court ruled that Mr. McKiver failed to establish "either prong under Strickland," I examine each in turn.

Mr. Lamberti's failure to interview the witnesses Mr. McKiver identified was deficient because it could not have been sound trial strategy. At the evidentiary hearing before the state trial court, Mr. Lamberti said he did not seek out these witnesses because Mr. McKiver told him he had ingested the whole bottle of pills and because he did not think the witnesses would admit, on the stand, to illegally purchasing opioids. But we know that Mr. McKiver clarified that when he referred to a full bottle of pills, he was talking about drugs other than the oxycodone that he had taken from Mr. Sneed's home. And Mr. McKiver always maintained there were very few pills remaining in the oxycodone bottle when he took them. Mr. Lamberti admitted Mr. McKiver told him he did not know exactly how many pills were in the bottle at the time, and this fact is also reflected in Lamberti's notes. Thus, even if we credit Mr. Lamberti's statement that Mr. McKiver said he ingested the whole bottle, this should not have ended Lamberti's inquiry.

Florida does not appear to dispute that Mr. Lamberti's decision not to interview the witnesses was deficient. Instead, the state argues that Mr. McKiver failed to establish, before the state court, that the witnesses existed and that they were willing and available to testify during his criminal trial. By this argument,

34

Florida appears to question Mr. McKiver's credibility. However, the state court found to the contrary that Mr. McKiver <u>was</u> credible. [4] In finding that the witnesses Mr. McKiver identified "would have challenged the testimony of State's witnesses and provided reasonable doubt as to the quantity for trafficking," the state trial court credited Mr. McKiver's testimony that these witnesses existed and that they were available and willing to testify at the time of the trial. This finding appears to have been adopted by the state appellate court. Florida's only argument as to why McKiver's testimony should not be credited on this point is that it was "self-serving." But this is far from the "clear and convincing" evidence necessary to overcome the state court's factual finding. <u>See</u> 28 U.S.C. § 2254(e)(1).[5]

The majority opinion takes the position that we may not look to the decision made by the state postconviction court who heard Mr. McKiver's postconviction

---

[4] The majority says the state postconviction court relied on Mr. McKiver's trial counsel's testimony, and not McKiver's testimony, in finding that a new trial was warranted based on deficient performance by trial counsel. Maj. Op. at 18. Not so. The state postconviction court expressly recounted Mr. McKiver's testimony that he had discussed the case with his trial counsel and told him that Mr. Sneed sold pills on the day of the incident, as well as advising him of the names of witnesses who could demonstrate that Sneed sold drugs. The state court's conclusion that the trial counsel's performance was deficient, because "witnesses may have provided" a "reasonable defense to the charges [by] refut[ing] the amount alleged by the State," necessarily relies on this testimony from Mr. McKiver. The majority also says the state postconviction court made no credibility finding. Maj. Op. at 18. But it is difficult to imagine how or why the postconviction court found in Mr. McKiver's favor if it did not credit his testimony.

[5] Of course, the fact that Mr. McKiver was eventually able to provide affidavits from the witnesses he identified only bolsters the state trial court's finding that Mr. McKiver's testimony was credible.

claims. In support of this position, the majority relies on cases in which this Court vacated its own panel decision or recognized generally that a vacation of a judgment by a federal appellate court divests the lower court's earlier judgment of its binding effect. Maj. Op. at 17.

The majority's reliance on those cases doesn't work here, however, because we look to Florida law to determine what (if any) aspects of a Florida state court decision survives state appellate review. This question is not simply resolved by asking whether the state postconviction court's judgment was vacated, but instead, on what grounds. And, under Florida law, a postconviction court's factual findings are deferred to as long as they "are supported by competent, substantial evidence," whereas legal conclusions are reviewed de novo. Brown v. State, 304 So.3d 243, 257 (Fla. 2020). I do not look to the postconviction court's legal conclusions here. I look only to its findings of fact. Given that this state appellate court offered no analysis of the postconviction court's factual findings, I don't think it proper to presume that it had "substitute[d] its judgment for that of the trial court on questions of fact," especially in the face of conflicting testimony. Lowe v. State, 2 So. 3d. 21, 29–30 (Fla. 2008) (quotation marks omitted).

Notably, the Florida Supreme Court has made clear that it is especially reluctant to displace the postconviction court's findings as to "the credibility of the

36

witnesses as well as the weight to be given the evidence." Id. at 30 (quotation marks omitted).

Furthermore, Mr. McKiver was prejudiced by Mr. Lamberti's deficiency because testimony regarding Mr. Sneed's illegal drug activity would have cast doubt on the only factual dispute at trial. That dispute, of course, goes to the number of pills in the bottle at the time Mr. McKiver stole it. The only evidence that there was a sufficient number of pills in the bottle to support Mr. McKiver's trafficking charge was Mr. Sneed's testimony that only six to eight pills had been removed from the bottle. Testimony from witnesses (saying they had bought oxycodone pills from Mr. Sneed in the past and that they had participated in or witnessed drug transactions with Sneed in the time between when he filled his prescription and when Mr. McKiver stole the bottle) would have cast doubt on Florida's contention that the bottle still had at least 53 pills in it by the time McKiver took it.

The majority reasons that the state appellate court's ruling that Mr. McKiver was not prejudiced could not be unreasonable. This is so, according to the majority, because even if all that testimony had been admitted, and even if the jury believed that Mr. Sneed did sell a number of pills from that bottle, the jury could still believe that at least 53 pills remained. Maj. Op. at 16. But this argument improperly places the burden on Mr. McKiver to prove that he did not meet the

trafficking amount.  It is Florida's burden to prove, beyond a reasonable doubt, that

Mr. McKiver took at least 53 pills and not one fewer.  See In re Winship, 397 U.S.

358, 363, 90 S. Ct. 1068, 1072 (1970) (the government must prove "beyond a

reasonable doubt the existence of every fact necessary to constitute the crime

charged") (quotation marks omitted).  And the prosecution sought to carry its

burden here based entirely on circumstantial evidence.  Based on the limited

evidence heard by the jury, it had no evidentiary basis for believing that Mr. Sneed

would have done anything with the pills but take them himself.  Had the jury been

presented with evidence that Mr. Sneed was a drug dealer and that he sold pills

from the very bottle Mr. McKiver stole, I think they would be hard pressed to find,

beyond a reasonable doubt, that any specific number of pills were left in the bottle.

Once Mr. McKiver introduced evidence that several people knew some

unspecified number of pills had been taken from the bottle, he would have

established that no one knew for certain how many remained.  It was Florida's

burden to show it was all but certain that Mr. McKiver took at least 53 pills.  Had

the witnesses Mr. McKiver identified testified, I am not convinced Florida could

have carried its burden.  I certainly think that Mr. McKiver has raised a

"reasonable . . . probability sufficient to undermine confidence in the outcome."

King, 748 F.2d at 1463 (quotation marks omitted).  Therefore, the state appellate

court's decision improperly placed the burden on Mr. McKiver to prove he was

innocent.  This was an objectively unreasonable application of <u>Strickland</u>, which entitles Mr. McKiver to relief.

This record demonstrates that Mr. McKiver was deprived of his right to effective assistance counsel by Mr. Lamberti's deficient performance.  On this record, the Florida appellate court's decision to the contrary was objectively unreasonable.

I respectfully dissent.