Grajales v. Commissioner of Internal Revenue

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2021

(Argued: May 19, 2022 | Decided: August 24, 2022)

Docket No. 21-1420

KIRGIZIA I. GRAJALES,

*Plaintiff-Appellant*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Defendant-Appellee*.[†]

_____

Before:

JACOBS, WESLEY, NARDINI, *Circuit Judges*.

_____

Kirgizia Grajales petitioned the United States Tax Court to redetermine her income tax deficiency after the Commissioner of Internal Revenue concluded that she was subject to a 10-percent exaction under 26 U.S.C. § 72(t) of the Internal Revenue Code for early distributions she made from her pension plan. Petitioner argued that she is not liable for the 10-percent exaction under Section 72(t) because it is a penalty, an additional amount, or an addition to tax within the meaning of Section 6751(c) of the Internal Revenue Code and that the Commissioner failed to obtain written supervisory approval for the initial determination to impose the

_____

[†] The Clerk of the Court is directed to amend the official caption as set forth above.

exaction, as required by Section 6751(b).  The United States Tax Court (Thornton, *J.*) ruled that the 10-percent exaction under Section 72(t) is not subject to the written supervisory requirement because it is a tax, not a penalty, an additional amount, or an addition to tax, and Petitioner is liable for the 10-percent exaction.

We **AFFIRM** the judgment of the Tax Court.

_____

FRANK AGOSTINO, Agostino & Associates, P.C., Hackensack, NJ (Phillip J. Colastano and Andrew D. Lendrum, Agostino & Associates, P.C., *on the brief*), *for Plaintiff-Appellant*.

POOJA A. BOISTURE, Department of Justice, Tax Division, Washington, D.C. (David A. Hubbert and Jacob Christensen, Department of Justice, Tax Division, *on the brief*), *for Defendant-Appellee*.

_____

WESLEY, *Circuit Judge*:

Kirgizia Grajales (the "Petitioner") petitioned the United States Tax Court to redetermine her income tax deficiency after the Commissioner of Internal Revenue concluded that she was subject to a 10-percent exaction (the "Exaction") under 26 U.S.C. § 72(t) of the Internal Revenue Code (the "Code") for early distributions she made from her pension plan.  Petitioner argues that the Exaction is not a tax but is, rather, a penalty, an additional amount, or an addition to tax within the meaning of Section 6751(c) of the Code—the imposition of which, under Section 6751(b)(1), requires written approval by the immediate supervisor of the

2

relevant IRS official. The parties agree that the Commissioner did not obtain written supervisory approval for his initial determination to impose the Exaction.

After the parties submitted the case based on a stipulated record under Tax Court Rule 122, the United States Tax Court (Thornton, *J.*) ruled that the Exaction is a tax, and therefore is not subject to the written supervisory approval requirement. We affirm the decision of the Tax Court; the plain and unambiguous language of Section 72(t) establishes that the Exaction is a tax, not a penalty, an additional amount, or an addition to tax within the meaning of Section 6751(c) that requires written supervisory approval. Petitioner is liable for the Exaction.

## BACKGROUND

### I.       Facts[1]

During the period relevant to this appeal, Petitioner was an employee of the State of New York and was a member of the State's pension plan—the New York State and Local Employees Retirement System. In 2015, at age 42, she borrowed from her pension account. Petitioner and the Commissioner received a Form 1099-R, *Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs,*

---

[1] We adopt the following facts as stated in both the Tax Court's opinion below and the parties' First Joint Stipulation of Facts and Joint Exhibits accepted by the Tax Court.

3

*Insurance Contracts, etc.*, reporting the gross distributions from her pension as $9,025.86 for 2015. When Petitioner timely filed her tax return for 2015, she did not report any of her retirement plan distributions as income.

In July 2017, the Commissioner issued Petitioner a notice of deficiency for the 2015 tax year determining that since Petitioner did not report her distributions, she had an income tax deficiency of $3,030.00. The notice also stated that Petitioner was subject to the Exaction in the amount of approximately $902.

Petitioner timely petitioned the Tax Court, requesting it redetermine her income tax deficiency.[2] The parties moved jointly under Tax Court Rule 122 to submit the case to the Tax Court based on a stipulated record without a trial. In their joint stipulation, the parties agreed that only $908.62 of Petitioner's pension plan distributions were taxable as an early distribution and, therefore, Petitioner's potential liability for the Exaction came to $90.86. Petitioner argued that she was not liable for the Exaction because Section 6751(b) required the Commissioner to obtain written supervisory approval for its initial determination of Petitioner's

---

[2] With the help of the New York County Lawyers Association, Agostino & Associates, P.C. has represented Petitioner in this case *pro bono*. The Court thanks them both for their gracious and professional service.

4

liability for the Exaction. The parties stipulated that the Commissioner had not obtained written supervisory approval for its determination of the Exaction. The Commissioner argued that none was required as the Exaction was a tax, not a "penalty," addition to tax," or "additional amount" within the meaning of Sections 6751(b) and (c). The only remaining issue for the Tax Court was whether the Commissioner's failure to obtain written approval precluded Petitioner's liability for the Exaction. This issue turns on whether the Exaction is a tax or a penalty, when "penalty" is defined to include both any "addition to tax" or any "additional amount."

## II.      The Tax Court's Decision

The Tax Court held that the Exaction was a tax rather than a penalty within the meaning of Sections 6751(b) and (c), and that Petitioner was liable in the amount of $90.86 for the Exaction. The Tax Court first determined that, in other contexts, it has repeatedly held that Section 72(t) is a tax; it saw no need to characterize Section 72(t) any differently. While citing an array of its decisions, the Tax Court heavily relied on its opinion in *El v. Comm'r*, 144 T.C. 140 (2015). The Tax Court noted that *El* held that Section 72(t) labels the Exaction a tax and not a penalty, that several other provisions in the Code explicitly refer to the Exaction

5

under Section 72(t) as a tax, and that Section 72(t) appears in chapter 1 with several income taxes whereas Section 6751 appears in chapter 68 with most of the other penalties in the Code.

The Tax Court then rejected Petitioner's argument that Section 72(t) should be considered an "additional amount" within the meaning of Section 6751(c). It reasoned that the phrase is "a term of art that refers exclusively to the civil penalties enumerated in chapter 68, subchapter A" and the Exaction "is not a civil penalty enumerated in chapter 68." *Grajales v. Comm'r*, 156 T.C. 55, 58–59 (2021).

Next, the Tax Court rejected Petitioner's argument that the Supreme Court's opinion in *National Federation of Independent Business v. Sebelius (NFIB)*, 567 U.S. 519 (2012), required it to adopt a functional approach to interpreting Section 72(t). The court ruled that *NFIB* did not require a functional approach as the stipulated case did not present a constitutional issue. The court reasoned that *NFIB* directed it "to look to the statutory text as 'the best evidence of Congress's intent,'" *id.* at 61 (quoting *NFIB*, 567 U.S. at 544), which "expressly labels [the Exaction] a 'tax', consistently with the larger statutory structure," *id.* (citing *El*, 144 T.C. at 148).

Lastly, the Tax Court held that the bankruptcy cases Petitioner relied on as holding that the Exaction is a penalty were not controlling. The court explained

6

that those cases were "based on the application of bankruptcy policy" and were "limited to determining priority of claims in bankruptcy proceedings." *Id.*

## DISCUSSION[3]

The sole issue on appeal—a novel one for us—is whether the Exaction is a penalty within the meaning of Section 6751(c) that requires written supervisory approval under Section 6751(b).

When interpreting the meaning of a statutory provision, "the best evidence of Congress's intent is the statutory text." *NFIB*, 567 U.S. at 544. Statutory interpretation always "begins with the plain language of the statute." *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 584 (2d Cir. 2007); *see Panjiva, Inc. v. U.S. Customs and Border Prot.*, 975 F.3d 171, 176 (2d Cir. 2020). We must not look merely at the plain language of a particular clause, "but consider in connection with it the whole statute." *Dada v. Mukasey*, 554 U.S. 1, 16 (2008) (internal quotation marks omitted). Indeed, "the true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it

---

[3] The standard of review is not in dispute. We review the Tax Court's statutory interpretations and decisions rendered on a stipulated record *de novo. See Borenstein v. Comm'r*, 919 F.3d 746, 749 (2d Cir. 2019); *Est. of McKelvey v. Comm'r*, 906 F.3d 26, 34 (2d Cir. 2018).

7

be considered apart from related sections." *Comm'r v. Engle*, 464 U.S. 206, 223 (1984). When Congress uses certain language in one section of the statute yet omits it in another section of the same Act, "it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion" of that language. *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021) (quoting *Russello v. U.S.*, 464 U.S. 16, 23 (1983)). And where "the statutory language provides a clear answer," our inquiry "ends there." *Peralta-Taveras*, 488 F.3d at 584 (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). Typically, we may resort to the legislative history and other canons of statutory construction only if the plain language is ambiguous or unclear. *See Panjiva*, 975 F.3d at 176; *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 143 (2d Cir. 2002).

This appeal turns on the construction of three statutory provisions in the Code: Section 72(t), Section 6751(b), and Section 6751(c). Section 72 concerns how amounts received as annuities are treated for tax purposes. *See* 26 U.S.C. § 72. Section 72(t) is captioned "10-percent additional tax on early distributions from qualified retirement plans." *Id.* § 72(t). Subsection 72(t)(1), subtitled "Imposition of additional tax," states:

8

> If any taxpayer receives any amount from a qualified retirement plan . . ., the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

*Id.* § 72(t)(1). Sections 6751(b) and (c) appear later in the Code at chapter 68, entitled "Additions to the Tax, Additional Amounts, and Assessable Penalties." Section 6751(b) states "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." 26 U.S.C. § 6751(b). Section 6751(c) explains that "[f]or purposes of this section, the term 'penalty' includes any addition to tax or any additional amount." *Id.* § 6751(c).

Petitioner argues that the plain language of Section 72(t) shows that the Exaction is not a tax but a penalty subject to Section 6751(b)'s written supervisory approval requirement. According to Petitioner, the language of Section 72(t) indicates that the Exaction is not calculated like regular income tax. "Because § 72(t) uses the amount includible in gross income again to add 10% to the 'taxpayer's tax,'" posits Petitioner, the Exaction is "not calculated in the same way

9

as the 'taxpayer's tax,'" is "something different from the 'taxpayer's tax,'" is "a quantity added to the usual tax," and is "a separate exaction based on income that has already been taxed (i.e., an addition to tax or an additional amount)." Appellant Br. 10. The Commissioner counters that the unambiguous language of Section 72(t) considered in the context of the Code establishes that the Exaction is a tax. We agree.

Section 72(t)(1) states that the "taxpayer's tax . . . *shall be increased* by an amount equal to 10 percent of the portion of such amount which is includible in gross income." 26 U.S.C. § 72(t)(1) (emphasis added). The meaning of this phrase is clear. When Section 72(t) indicates that the taxpayer's tax "shall be increased" by 10 percent, it clearly signals that the taxpayer's *tax* becomes greater, not that the additional charge transforms into something different.

The terms "penalty," "additional amount," and "addition to tax" do not appear in Section 72(t).[4] Congress deliberately omitted them from Section 72(t);

---

[4] To be clear, the terms "additional amount" and "addition to tax" as used in Section 6751(c) are terms of art that refer to certain civil penalties enumerated in chapter 68 of the Code. *See, e.g.,* 26 U.S.C. §§ *et seq.* 6651(a), 6654(a); *cf. Whistleblower 22716-13W v. Comm'r*, 146 T.C. 84, 95 (2016).

10

they are incorporated in other provisions of the Code.[5] *See Homaidan*, 3 F.4th at 602. The plain language of Section 72(t)(1) establishes that the Exaction is a tax and Section 6751 does not suggest otherwise.

Contrary to Petitioner's suggestion, the fact that the Exemption is not calculated like regular income tax does not mean it is not a tax. There are numerous types of income taxes, *see Ross v. Comm'r*, 70 T.C.M. (CCH) 1596, 1995 WL 750120, at *6 (T.C. 1995); many are calculated differently from the regular income tax found in Section 1 of the Code. The self-employment tax, for instance, imposes a different rate of tax on self-employment income. *Compare* 26 U.S.C. § 1401 (imposing a tax of at least 12.4 percent per year on the self-employment income of individuals), *with id.* § 1(c) (imposing a tax of 15-to-39.6 percent per year on the income of unmarried individuals). Like various other taxes, the Exaction is calculated differently than regular income tax. But that does not make it a penalty—it is a feature, not a bug in the Code triggering the written supervisory approval requirement.

---

[5] *See, e.g.,* 26 U.S.C. §§ *et seq.* 6651(a) (imposing an addition to tax for failure to file tax return or to pay tax), 6654(a) (imposing an addition to tax for a failure to pay estimated income tax), 6662(a) (imposing an accuracy-related penalty on underpayments), and 6663(a) (imposing a fraud penalty).

The plain language of Section 72(t) is not the only provision in the Code treating the Exaction as a tax and not a penalty. At least six separate provisions explicitly refer to the Exaction as a tax.[6] Together with the substantive text of Section 72(t)(1), the plain language of Section 72(t) considered in connection with the rest of the Code is unambiguous: the Exaction is a tax, not a penalty.[7]

---

[6] *See, e.g.*, 26 U.S.C. §§, *et seq.* 26(b)(2)(C) (referring to certain subsections of Section 72 as an "additional tax[ ] on certain distributions"), 401(k)(8)(D) ("No tax shall be imposed under section 72(t) on any amount required to be distributed under this paragraph."), 401(m)(7)(A) ("No tax shall be imposed under section 72(t) on any amount required to be distributed under paragraph (6)."), 402(g)(2)(C) ("No tax shall be imposed under section 72(t) on any distribution described in the preceding sentence"), 414(w)(1)(B) (stating that "no tax shall be imposed under section 72(t) with respect to" distributions made under eligible automatic contribution arrangements), and 877A(g)(6) ("The term 'early distribution tax' means any increase in tax imposed under," *inter alia*, "section 72(t).").

[7] We reach this conclusion without having to consider the captions for Section 72(t) and 72(t)(1) labeling the Exaction as an "additional tax," 26 U.S.C. § 72(t), or comparing where Section 72(t) and Section 68 appear in the Code. Other courts have recognized that Section 7806(b) precludes drawing any inferences from or giving any legal effect to these aspects of the Code. *See, e.g.*, *U.S. v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222 (1996) (accepting the government's concession that Section 7806(b) prevented it from relying on the heading of subtitle D, "Miscellaneous Excise Taxes"); *Alcoa, Inc. v. U.S.*, 509 F.3d 173, 181 n.7 (3d Cir. 2007) (acknowledging that Section 7806(b) "provide[s] that no legal effect should be given to descriptive matter in the Code" (internal quotation marks omitted)); *Ballard v. Comm'r*, 854 F.2d 185, 188 (7th Cir. 1988) (noting that Section 7806 "states that no inference or implication is to be drawn from a section's placement in the Code"). Even if we did consider them, the captions of Sections 72(q) and 72(m)(5)(B) labeling themselves as penalties—which Petitioner suggests show the Exaction is a penalty—are irrelevant. The substantive language of these provisions indeed mirrors that of Section 72(t)(1) but they do not change the meaning of the plain language of Section 72(t).

12

Finally, Petitioner argues that the Exaction's intended purpose is to discourage taxpayers from making early withdrawals from their retirement plans. In Petitioner's eyes, that makes the Exaction a penalty. She invites us to take what she views as a functional approach to construing the Exaction, which, in our view, conflicts with the statute's plain language.

A "tax, in the general understanding of the term," is merely "an exaction for the support of the government." *U.S. v. Butler*, 297 U.S. 1, 61 (1936). The Exaction does not cease to be a tax simply because it "discourages, or even definitely deters," certain activities, even if "the revenue purpose of the tax may be secondary." *U.S. v. Sanchez*, 340 U.S. 42, 44 (1950).

Our threshold inquiry is deciphering a statute's form, not its function. *See Panjiva*, 975 F.3d at 176; *Peralta-Taveras*, 488 F.3d at 584. As Petitioner concedes, we take a functional approach by looking "to the statute as a whole and construct an interpretation that comports with its primary purpose" only "[i]f the text of the statute is ambiguous." Appellant Br. 11 (quoting *Conn. ex rel. Blumenthal v. U.S. Dep't of Interior*, 228 F.3d 82, 89 (2d Cir. 2000)).

Here, the statute at issue is not ambiguous; the plain language of Section 72(t) properly considered in the context of the Code establishes that the Exaction

13

is a tax. The purpose of the Exaction, as a result, is not determinative. What matters is the meaning Congress ascribed to it. And that meaning was clearly a tax, not a penalty.

Petitioner relies on *NFIB* and bankruptcy cases to suggest that the Exaction's penal purpose proves it is a penalty. These decisions are inapposite. *NFIB* involved a challenge to the individual mandate of the Patient Protection and Affordable Care Act (the "Affordable Care Act") and its exaction imposed on individuals without health insurance. Petitioner, however, overlooks that *NFIB* presented, *inter alia*, two separate issues: whether the Anti-Injunction Act, which bars lawsuits to prevent the assessment or collection of taxes, precluded the litigation and whether the individual mandate exceeded Congress's authority under the Constitution. The Court construed the plain language of the Affordable Care Act to conclude that the individual mandate was a penalty not subject to the bar of the Anti-Injunction Act. *See NFIB*, 567 U.S. at 534–44. But in determining that the individual mandate was a tax and, therefore, within Congress's taxing power under the Constitution, the Court examined the function of the individual mandate. *See id.* at 565–70. In doing so, the Supreme Court made clear it had to look past the definition and precise language of the Affordable Care Act because

it was deciding the Act's constitutionality. *See id.* at 564–65 (citing *Nelson v. Sears, Roebuck & Co.*, 312 U.S. 359, 363 (1941)). The Court explained that while Congress's choice to label the Affordable Care Act as a penalty may guide the Court's determination of whether the Anti-Injunction Act applies since it is "up to Congress whether to apply the Anti-Injunction Act to any particular statue," Congress's choice of label "does not . . . control whether an exaction is within Congress's constitutional power to tax." *Id* at 564*.* This appeal clearly involves determining whether Congress classified the Exaction as a tax or a penalty—a matter of statutory construction, not constitutional authorization.

Lastly, the bankruptcy cases Petitioner cites are of no help. When determining the priority of claims in the context of a bankruptcy, courts may "recharacterize for purposes of bankruptcy what Congress has deemed a tax in the Internal Revenue Code." *In re Cassidy*, 983 F.2d 161, 162 (10th Cir. 1992); *see U.S. v. Sotelo*, 436 U.S. 268, 275 (1978). This appeal, however, presents no constitutional issues and has no connection to a bankruptcy proceeding.

Since the Exaction is a tax and not a penalty within the meaning of Section 6751(c), Section 6751(b) does not apply and the Commissioner was not required to obtain written supervisory approval. No matter how broadly Petitioner insists

Section 6751 must be construed under the Code, it does not swallow Section 72(t).

Petitioner is liable for the Exaction.

## CONCLUSION

We have considered Petitioner's remaining arguments on appeal and conclude that they are without merit. We thus **AFFIRM** the judgment of the Tax Court.