# United States Tax Court

160 T.C. No. 1

BLAKE M. ADAMS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 1527-21P.                    Filed January 24, 2023.

————

P had more than $1.2 million in unpaid, legally enforceable federal income tax liabilities for eight taxable years (relevant years). R attempted to collect those liabilities, but had little success.

Ultimately, R certified to the Secretary of State that P had a "seriously delinquent tax debt" within the meaning of I.R.C. § 7345(b) for the relevant years. P filed a Petition with this Court under I.R.C. § 7345(e)(1) to challenge the certification.

R filed a Motion for Summary Judgment maintaining that the certification was proper.

P filed a competing Motion for Summary Judgment arguing that (1) the certification was erroneous because R has not shown that the tax liabilities for the relevant years have been properly assessed and (2) declining to renew P's passport because of unpaid taxes is an unconstitutional denial of P's right to international travel.

*Held*: To the extent P raises a substantive challenge to the liabilities underlying the I.R.C. § 7345 certification (that is, to the extent he claims he owes no tax for the

relevant years), we lack jurisdiction to review the liabilities underlying the I.R.C. § 7345 certification.

*Held, further*, to the extent P raises a definitional challenge based on the text of I.R.C. § 7345(b)(1)(A), P's statutory argument fails because I.R.C. § 7345(b)(1)(A) requires that the unpaid, legally enforceable tax liability underlying a seriously delinquent tax debt "has been assessed," not that it "has been *properly* assessed," and there is no dispute here that the underlying liabilities for the relevant years have been assessed.

*Held, further*, we lack jurisdiction to review the constitutionality of passport-related actions taken by the Secretary of State under the Fixing America's Surface Transportation Act, Pub. L. No. 114-94, § 32101, 129 Stat. 1312, 1729–33 (2015).

*Held, further*, P is not entitled to summary judgment.

*Held, further*, R's certification was not erroneous, and R is entitled to summary judgment.

―――――――

Blake M. Adams, pro se.

*Christina L. Holland* and *John S. Hitt*, for respondent.

OPINION

TORO, *Judge*: In this passport case, petitioner, Blake M. Adams, seeks review pursuant to section 7345(e)[1] of the Commissioner of Internal Revenue's certification to the Secretary of State that Mr. Adams has a "seriously delinquent tax debt" related to tax years 2007, 2009, 2010, 2011, 2012, 2013, 2014, and 2015 (relevant years).

―――――――――――――

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Now before the Court are competing Motions for Summary Judgment. As we explain below, we will grant the Commissioner's Motion and deny Mr. Adams's.

*Background*

The following facts are derived from the parties' pleadings and Motion papers and the Declarations and Exhibits attached thereto as well as from Responses to the Court's Order served October 4, 2022. They are stated solely for the purpose of ruling on the Motions before us and not as findings of fact in this case. *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021).

Mr. Adams failed to file federal income tax returns for the relevant years, and the Commissioner prepared a substitute for return under section 6020(b) for each year. In due course, the Commissioner assessed the tax shown in the substitutes for returns together with penalties and interest. In total, the Commissioner assessed more than $1.2 million in federal income tax, including interest and penalties, for the relevant years. But Mr. Adams did not pay the assessed amounts.

Aiming to collect Mr. Adams's substantial outstanding liabilities, the Commissioner filed a notice of federal tax lien (NFTL) pursuant to section 6323(f) for each of the relevant years. As required by section 6320, the Commissioner notified Mr. Adams of the filing of the NFTLs and of his rights under section 6320, including the right to request a collection due process hearing. The dates of the NFTL filings and notices of the NFTL filings are as follows:

| Year | Date of NFTL Filing | Date of Notice of NFTL Filing |
|------|---------------------|-------------------------------|
| 2007 | August 7, 2015 | August 11, 2015 |
| 2009 | | |
| 2010 | | |
| 2011 | | |
| 2012 | August 5, 2016 | August 11, 2016 |
| 2013 | | |
| 2014 | August 16, 2019 | August 20, 2019 |
| 2015 | December 13, 2019 | December 17, 2019 |

Mr. Adams did not request a collection due process hearing for any of the relevant years. There is no dispute that the time for doing so has lapsed. I.R.C. § 6320(a)(2), (3)(B).[2]

The Commissioner's collection efforts proved unsuccessful, and on March 16, 2020, the Commissioner certified to the Secretary of State that Mr. Adams had a "seriously delinquent tax debt," which at the time of certification totaled $1,206,083.95 for the relevant years.[3] Nearly nine months later, on January 4, 2021, Mr. Adams petitioned this Court to review the Commissioner's certification pursuant to section 7345(e)(1).

In time, the Commissioner moved for summary judgment, arguing that Mr. Adams had a seriously delinquent tax debt as of the time of the certification and that, therefore, the certification was correct and should be sustained. Mr. Adams responded with his own Motion for Summary Judgment. The Commissioner filed a Response to Mr. Adams's Motion. Although we directed Mr. Adams to file a response, if any, to the Commissioner's Motion, and extended the deadline for doing so twice, Mr. Adams did not file a response.

Because the record did not establish whether the Secretary of State had taken any adverse action with respect to Mr. Adams's passport, by Order served October 4, 2022, we directed the parties to file a status report advising the Court on this point.

On October 17, 2022, the Commissioner filed a Status Report advising that (1) the State Department issued a passport to Mr. Adams on May 20, 2017, (2) the passport will expire on May 19, 2027, and (3) "the State Department did not advise that any adverse action had been taken" with respect to Mr. Adams's passport. Resp't's Status Report 1. The Status Report also noted that counsel for the Commissioner spoke with Mr. Adams on October 17, 2022, and that Mr. Adams "did not dispute any of the above information but said that

---

[2] To facilitate the collection of the outstanding liabilities, the Commissioner also relied on a levy for each of the relevant years. Because consideration of the NFTLs suffices for resolving the case, we do not discuss the levies further. *See also infra* note 5.

[3] The Commissioner certified Mr. Adams as an individual with a seriously delinquent tax debt for various of the relevant years on two other occasions, on July 30, 2018, and November 18, 2019. Mr. Adams did not challenge those certifications, and we do not address them further.

he had lost his passport and intended to apply for a new passport." *Id.* at 2.

On November 14, 2022, after we extended the deadline for complying with the Court's October 4 Order, Mr. Adams filed a Status Report advising that he had "scheduled an appointment with Miami Passport Agency OMNI Center for October 21, 2022, at 7:30 a.m. to apply for a passport." Pet'r's Status Report 1. Mr. Adams further indicated that he had received a letter dated October 21, 2022, from "the United States Department of State . . . denying issuance of a passport due to the Department of Treasury's IRS certification of seriously delinquent tax de[b]t." *Id.* at 2. Mr. Adams attached to the Status Report a copy of the letter he received from the Department of State. *Id.* Ex. 1. In relevant part, the letter reads:

> Thank you for your recent passport application. Unfortunately, you are ineligible to receive passport services because the Department of Treasury's Internal Revenue Service (IRS) certified that you have a seriously delinquent tax debt.
>
> .  .  .  .
>
> You must contact and make appropriate arrangements with the IRS within ninety (90) days from the date of this letter.
>
> Once the Secretary of the Treasury has certified to the Secretary of State that you have satisfied the seriously delinquent tax debt, your name will be removed from the certified list. If satisfactory payment arrangements have not been made within 90 days of the date of this letter, your application will be denied. The Department of State cannot change, override, or appeal this policy.

*Id.*

*Discussion*

I.  *Background Law*

    A.  *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988).

Generally, in cases that are subject to a de novo scope of review, this Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In such cases, the moving party bears the burden of proving that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). And, in deciding whether to grant summary judgment in such cases, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

But, as we recognized in *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020), in cases in which the Court "must confine [itself] to the administrative record to decide whether there has been an abuse of discretion," the ordinary "summary judgment standard is not generally apt." In those cases, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 79.

Our Court has not yet decided the scope of review and the standard of review for cases arising under section 7345. As we observed in *Rowen*, 156 T.C. at 106, we need not consider them when "there is no dispute between the parties with respect to the evidence we should consider . . . [and when] our decision would be the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion." The circumstances before us here are similar to those in *Rowen*. As to the scope of review, there is no material dispute between the parties regarding the evidence we should consider. As to the standard of review, our decision would be the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion. Therefore, we once again have no occasion to decide the scope of review

and the standard of review for cases where the merits of the Commissioner's certification pursuant to section 7345 are at issue.

For convenience, however, and following the parties' lead, we use the terminology of the ordinary summary judgment standard in the discussion that follows.

B.  *Certifications of Seriously Delinquent Tax Debts*

Congress enacted section 7345 as part of the Fixing America's Surface Transportation Act (FAST Act), Pub. L. No. 114-94, § 32101(a), 129 Stat. 1312, 1729 (2015).  We provided a comprehensive description of FAST Act § 32101 and Code section 7345 in *Rowen* and need not repeat that discussion here.  We focus instead on the portions of section 7345 relevant to the dispute before us.

If the Commissioner certifies that a taxpayer has "a seriously delinquent tax debt," section 7345(a) provides that that certification shall be transmitted "to the Secretary of State for action with respect to denial, revocation, or limitation of [the taxpayer's] passport."[4]  The Commissioner is responsible for notifying the taxpayer of the certification.  I.R.C. § 7345(d).

1.  *Definition of "Seriously Delinquent Tax Debt"*

The term "seriously delinquent tax debt" is defined in section 7345(b).  It generally means

> an unpaid, legally enforceable Federal tax liability of an individual—
>
> (A) which has been assessed,
>
> (B) which is greater than $50,000, and
>
> (C) with respect to which—

---

[4] Section 7345 outlines a two-step procedure whereby the Commissioner sends certification to the Secretary of the Treasury, who then transmits the certification to the Secretary of State.  In practice, the IRS follows a one-step procedure whereby the Commissioner, as the Secretary's delegate, transmits the certification directly to the State Department.  *See* I.R.C. § 7701(a)(11); Internal Revenue Manual 5.1.12.27.1, .6, .8 (Dec. 20, 2017).

(i) a notice of lien has been filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing have been exhausted or have lapsed, or

(ii) a levy is made pursuant to section 6331.

I.R.C. § 7345(b)(1). The threshold amount described in subparagraph (B) is modified by subsection (f) to account for inflation. The threshold amount relevant here (i.e., the amount for the year when the section 7345 certification was made) was $53,000. *See* Rev. Proc. 2019-44, § 3.59, 2019-47 I.R.B. 1093, 1103.

The statute provides exceptions to this definition. For instance, a seriously delinquent tax debt does not include "a debt with respect to which collection is suspended . . . because a due process hearing under section 6330 is requested or pending," or because relief from joint and several liability is sought pursuant to subsection (b), (c), or (f) of section 6015. I.R.C. § 7345(b)(2)(B). Additionally, no "debt that is being paid in a timely manner pursuant to an [installment] agreement . . . under section 6159 or [a compromise agreement under section] 7122" is a seriously delinquent tax debt. I.R.C. § 7345(b)(2)(A).

If a certification is found to be erroneous or if the certified debt is fully satisfied or ceases to be seriously delinquent because of one of the exceptions, then the IRS must reverse its certification and notify the Secretary of State and the taxpayer. I.R.C. § 7345(c)(1), (d). "In the case of a certification found to be erroneous, such notification shall be made as soon as practicable after such finding." I.R.C. § 7345(c)(2)(D).

### 2. *Our Role in Reviewing Section 7345 Certifications*

Section 7345(e)(1) permits a taxpayer who has been certified as having a seriously delinquent tax debt to petition this Court to determine "whether the certification was erroneous or whether the [IRS] has failed to reverse the certification." Our jurisdiction in reviewing certifications of seriously delinquent tax debts is set forth in section 7345(e)(1). If we find that a certification was erroneous, we "may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous." I.R.C. § 7345(e)(2). The statute specifies no other form of relief that we may grant. *Ruesch v. Commissioner*, 25 F.4th 67, 70 (2d Cir. 2022), *aff'g in part, vacating and remanding in part* 154 T.C. 289 (2020).

II.    *Analysis*

With this background in mind, we turn to the issues before us. The Commissioner asks that we sustain his certification, while Mr. Adams argues that (1) the certification was erroneous because the Commissioner has not shown that the tax liabilities for the relevant years were properly assessed and (2) declining to renew Mr. Adams's passport is an unconstitutional denial of his right to international travel. As described further below, we find in favor of the Commissioner on all points.

A.    *The Commissioner's Certification Was Not Erroneous.*

The Commissioner maintains that Mr. Adams's outstanding liabilities qualified as "seriously delinquent tax debt" as of the time of the Commissioner's certification. Specifically, he contends that by then, the Commissioner had assessed more than $1.2 million in federal tax liabilities, including penalties and interest, for the relevant years, meeting the requirements of section 7345(b)(1)(A) and (B) and (f).[5] Those liabilities remained unpaid and were legally enforceable. In addition, for each of the relevant years, the IRS had properly filed a notice of federal tax lien pursuant to section 6323, and Mr. Adams had allowed his collection due process rights under section 6320 to lapse, meeting the requirements of section 7345(b)(1)(C)(i). We agree with the Commissioner's analysis. We therefore conclude that Mr. Adams's certification was not erroneous and should be sustained.

B.    *Mr. Adams's Contrary Arguments Are Unavailing.*

Mr. Adams makes two arguments as to why he believes the certification was erroneous. First, he argues that the Commissioner's certification was erroneous because "[the Commissioner] has no admissible evidence that [the] Notices of Deficiency were created and mailed by certified mail to Petitioner's last known address for any of the years at issue" and that he "as a matter of law has failed to prove that any of the taxes for years 2007 through 2015 were properly assessed on Petitioner." Pet'r's Mot. for Summ. J. 1, 5. Second, Mr. Adams argues that "[t]aking Petitioner's passport over taxes is a clear denial of

---

[5] Mr. Adams does not argue (and the record does not show) that any of the exceptions to the definition of "seriously delinquent tax debt" in section 7345(b)(2) apply here, so we need not consider those exceptions further.

petitioner's right to international travel, which is unconstitutional." *Id.* at 5. Neither argument carries the day.

### 1. *Mr. Adams's First Argument*

Mr. Adams's first argument can be read in one of two ways. First, one might interpret it as raising a substantive challenge to the liabilities underlying the section 7345 certification. Second, one might interpret it simply as alleging that the statutory definition is not satisfied because the liabilities at issue here have not "been assessed."

Because Mr. Adams is representing himself, we construe his submissions liberally and will address each interpretation of his first argument. *See* Rule 31(d) ("All pleadings shall be so construed as to do substantial justice."); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (explaining that documents filed by pro se litigants are "to be liberally construed" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Gray v. Commissioner*, 138 T.C. 295, 298 (2012) ("All claims in a petition should be broadly construed so as to do substantial justice, and a petition filed by a pro se litigant should be liberally construed."), *supplemented by* 140 T.C. 163 (2013). As we now explain, we find neither interpretation persuasive.

### a. *Substantive Challenge to the Liabilities Underlying the Section 7345 Certification*

To the extent Mr. Adams intends to press a substantive challenge to the liabilities underlying the section 7345 certification, we face a threshold question: Does section 7345 authorize us to look behind the outstanding liabilities as of the time of the certification and consider issues that affect the determination of those liabilities?

The Commissioner points out that this Court previously answered the question in the Commissioner's favor in *Ruesch*, 154 T.C. at 297, holding that we do not have jurisdiction to redetermine the tax liabilities underlying the certification of a seriously delinquent tax debt. On appeal, the U.S. Court of Appeals for the Second Circuit vacated for mootness the portion of our order in *Ruesch* resolving the jurisdictional question. *See Ruesch v. Commissioner*, 25 F.4th at 71–72.[6]

_____

[6] The Second Circuit vacated the *Ruesch* order in part because, at the time we issued the order (and the opinion setting out our reasoning in support of the order),

The view of the Supreme Court and virtually all the courts of appeals is that when a judgment is vacated, the vacatur deprives the underlying opinion of any precedential effect. *See O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect . . . ." (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950))); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25–29 (1994) (discussing the subject of vacatur); *see also, e.g.*, *Pub. Serv. Co. of N.H. v. Consol. Utils. & Commc'ns, Inc.*, 846 F.2d 803, 811 (1st Cir. 1988) (Vacatur on appeal "deprives the district court's opinions of precedential effect." (cleaned up)); *Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 721 F.3d 54, 68 (2d Cir. 2013) ("[V]acatur dissipates precedential force."); *1621 Route 22 W. Operating Co. v. NLRB*, 825 F.3d 128, 141 n.6 (3d Cir. 2016) (A vacated opinion "carries no precedential force."); *Hirschfeld v. ATF*, 14 F.4th 322, 328 (4th Cir. 2021), *cert. denied sub nom. Marshall v. ATF*, 142 S. Ct. 1447 (2022); *id.* (Wynn, J., concurring in the result of the Orders of Dismissal and Vacatur) ("I write separately to emphasize that while, thanks to today's technology, *all* vacated opinions remain available in the public sphere, they have no legal value. Once vacated, a prior opinion loses precedential value within this circuit." (cleaned up)); *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 n.57 (5th Cir. 2001) (describing "the important difference between [the] treatment of a panel opinion after *vacatur* by the Supreme Court and [the] treatment when a judgment is reversed on other grounds"); *Amelkin v. McClure*, 330 F.3d 822, 828 (6th Cir. 2003) ("The . . . reasoning in the vacated decision . . . does not operate as the law of the case."); *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 n.5 (7th Cir. 2017) ("A vacated panel opinion has no precedential force."); *Salitros v. Chrysler Corp.*, 306 F.3d 562, 575 n.2 (8th Cir. 2002) ("A vacated decision is deprived of its precedential effect."); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A decision may be *reversed* on other grounds, but a decision that has been *vacated* has no precedential authority whatsoever."); *United States v. Nacchio*, 555 F.3d 1234, 1243 n.9 (10th Cir. 2009) (The holding of a vacated opinion "has no decisional significance" and is only "an historical artifact."); *McKiver v. Sec'y, Fla.*

---

the taxpayer had already received (from the IRS) the only relief she could under section 7345: the reversal of her section 7345 certification. The Second Circuit concluded that the question of mootness is an antecedent question to the question of jurisdiction. *Ruesch v. Commissioner*, 25 F.4th at 71–72. Here, by contrast, Mr. Adams's section 7345 certification is still in effect, and whether we have jurisdiction to redetermine his underlying liabilities remains a live controversy.

*Dep't of Corr.*, 991 F.3d 1357, 1367 (11th Cir. 2021) (A "vacated opinion is officially gone and has no legal effect whatever, and none of the statements made therein has any remaining force.'" (cleaned up)), *cert. denied sub nom. McKiver v. Inch*, 142 S. Ct. 441 (2021).[7]

Although an opinion issued in connection with a vacated judgment retains no precedential effect, if the judgment is vacated for reasons unrelated to the opinion's analysis of an issue, nothing precludes a future court from considering that analysis as persuasive authority. To illustrate, in *Seminole Nursing Home, Inc. v. Commissioner*, 12 F.4th 1150 (10th Cir. 2021), *aff'g* T.C. Memo. 2017-102, the U.S. Court of Appeals for the Tenth Circuit recently accepted our Court's reliance on a previous decision, *Lindsay Manor Nursing Home, Inc. v. Commissioner*, 148 T.C. 235 (2017), *vacated on other grounds*, 725 F. App'x 713 (10th Cir. 2018), that had been vacated by the Tenth Circuit for mootness. Explaining its rationale, the Tenth Circuit stated: "[W]e vacated [the Tax Court's] ruling only because the case had been moot at the time of the ruling . . . . It was hardly an abuse of discretion for the Tax Court to continue to adopt that court's prior reasoning when no higher court had cast doubt on that reasoning." *Seminole Nursing Home, Inc. v. Commissioner*, 12 F.4th at 1160.

Like the Tenth Circuit in *Seminole Nursing Home*, the Second Circuit in *Ruesch* cast no doubt on our Court's substantive analysis of the underlying issue (i.e., our lack of jurisdiction to review the tax liabilities underlying a section 7345 certification). Instead, the Second Circuit simply held that the question was moot in that particular case. Accordingly, although our opinion in *Ruesch* was deprived of its precedential effect, it has not lost its persuasive value. *See Seminole Nursing Home, Inc. v. Commissioner*, 12 F.4th at 1160. And we see no reason to depart from it here. We therefore readopt our holding in *Ruesch*, concluding that we do not have jurisdiction to review the

---

[7] The D.C. Circuit's view appears to be more nuanced. *See Simon v. Republic of Hungary*, 579 F. Supp. 3d 91, 137–38 (D.D.C. 2021) (summarizing D.C. Circuit precedent); *cf. Coal. to End Permanent Cong. v. Runyon*, 979 F.2d 219, 221 n.2 (D.C. Cir. 1992) (Silberman, J., dissenting from the per curiam disposition) ("Even a mooted decision that is not vacated still retains precedential value, since the very reason we vacate is to remove a decision's precedential effect. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure 2d* § 3533.10, at 442–43 (1984). And even a vacated opinion, while no longer the law of the case, still may carry 'persuasive authority,' *see Los Angeles v. Davis,* 440 U.S. 625, 646 n.10 (1979) (Powell, J., dissenting), and even some precedential value, *see Action Alliance of Senior Citizens v. Sullivan,* 930 F.2d 77, 83 (D.C. Cir. 1991).").

liabilities underlying the certification of a seriously delinquent tax debt. *See Ruesch*, 154 T.C. at 295–98 (reasoning that the text of section 7345(e)(1) contains no such jurisdictional grant).

As applied to this case, our conclusion means that we cannot redetermine the tax liabilities underlying Mr. Adams's section 7345 certification. We therefore decline to address the merits of his claim that he owes no tax for the relevant years.

b. *Definitional Challenge to the Section 7345 Certification*

As already noted, one might also interpret Mr. Adams's first argument not as contesting the merits of the underlying liabilities, but simply as alleging that the statutory definition is not satisfied because the liabilities at issue here have not "been assessed." This argument merits closer consideration because whatever else the statute does or does not permit us to do, it seems plain that it requires us to consider whether the liabilities at issue were in fact assessed. An assessed liability must exist before a seriously delinquent tax debt may be found. *See* I.R.C. § 7345(b)(1)(A).

Section 6201(a)(1) directs the Secretary of the Treasury to "assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists . . . are made." An assessment is made when the IRS makes an entry in its books that the taxpayer owes tax. I.R.C. § 6203; *Hibbs v. Winn*, 542 U.S. 88, 100 (2004); *Baltic v. Commissioner*, 129 T.C. 178, 183 (2007).

There is no dispute here that the IRS assessed the amounts it thought Mr. Adams owed for the relevant tax years. Mr. Adams does not contend otherwise. Rather, Mr. Adams appears to argue that the assessments were improper because they failed to comply with certain procedural requirements, such as the rule in section 6213(a) that no assessment of a deficiency may be made until, among other things, a notice of deficiency has been mailed to the taxpayer. And, in his view, without a proper assessment, there can be no seriously delinquent tax debt.

The text of section 7345 refutes Mr. Adams's argument. Section 7345 requires simply that the liability "has been assessed," not that the liability "has been *properly* assessed." The statute imposes no additional conditions besides mere assessment and includes no cross-references to the procedural requirements on which Mr. Adams relies.

*Cf. Knight v. Commissioner*, 552 U.S. 181, 188 (2008) ("The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [a] reading [that relies on the rejected alternative text].").  In short, once the existence of an assessment is shown (as has been done here), section 7345(b)(1)(A) is satisfied, and we have no authority to inquire further.

Our reading of section 7345(b)(1)(A) is confirmed by the text of section 7345(b)(1)(C).  Each clause of section 7345(b)(1)(C) contemplates that the filing of a notice of lien or the making of a levy must have been "pursuant to" a relevant Code provision (section 6323, in the case of liens, and section 6332, in the case of levies).  By contrast, section 7345(b)(1)(A) contains no such "pursuant to" language to qualify the phrase "which has been assessed."  Courts assume that when Congress includes specific words in one provision and excludes them from a neighboring provision, it does so intentionally.  *See, e.g.*, *Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *Grajales v. Commissioner*, 47 F.4th 58, 62 (2d Cir. 2022) (same), *aff'g* 156 T.C. 55 (2021).  We therefore will not read the word "properly" into the text of section 7345(b)(1)(A), as Mr. Adams wishes for us to do.

Our conclusion is also consistent with the Code's overall structure for assessments and collections.  Before receiving the certification now before us, Mr. Adams had multiple opportunities to challenge the assessments of tax for the relevant years.  For example, he could have challenged in our Court any notices of deficiency the IRS sent before making the assessments.[8]  *See* I.R.C. § 6213(a).  Even if Mr. Adams did not receive notices of deficiency, he could have challenged the propriety of the assessments in collection due process proceedings for the relevant years.  *See* I.R.C. §§ 6320(b)(1), (c), 6330(c)(1) and (2)(A).  He was sent notices of his right to such proceedings both when the NFTLs were filed and when the IRS proposed to levy.  And, if he had been dissatisfied with the outcome of those proceedings, he again could have sought further review in our Court.  *See* I.R.C. §§ 6320(c), 6330(d)(1); *see also, e.g.*,

_____

[8] Mr. Adams does not appear to contend that he did not receive notices of deficiency for the relevant years.  Instead, he appears to argue that the Commissioner failed to show that he sent them the proper way as provided under section 6212(a), which authorizes the Secretary to send notices "by certified mail or registered mail."

*Callahan v. Commissioner*, 130 T.C. 44, 50 (2008) (reviewing a taxpayer's underlying liability de novo in a CDP case when the taxpayer had not received a notice of deficiency); *Craig v. Commissioner*, 119 T.C. 252, 261 (2002) (same). Given these prior opportunities for administrative and judicial review, it is entirely reasonable for section 7345(b)(1)(A) not to offer yet another avenue for challenging whether an assessment has been *properly* made, but to require only that the assessment has been made.

In view of the foregoing, we agree with the Commissioner that, as of the time the certification was made, Mr. Adams had a seriously delinquent tax debt and therefore the Commissioner's certification was not erroneous.

2.       *Mr. Adams's Second Argument*

As noted, Mr. Adams also argues that "[t]aking [his] passport over taxes is a clear denial of [his] right to international travel, which is unconstitutional." Pet'r's Mot. for Summ. J. 5. Mr. Adams recognizes that in *Rowen*, 156 T.C. at 111, we rejected a claim that "[section] 7345 is unconstitutional . . . because it prohibits international travel." As we observed in *Rowen*:

> [S]ection 7345 simply authorizes the Commissioner to certify the existence of a seriously delinquent tax debt based on the presence of certain tax-related facts (for example, an outstanding liability for an assessed tax in excess of a specified amount, the existence of a lien or levy, and the absence of proceedings before IRS Appeals). A provision other than section 7345 (FAST Act section 32101(e)) gives a different government actor (the Secretary of State) power to act with respect to a passport after receiving a certification made by the Commissioner. FAST Act section 32101(e) requires the Secretary of State to exercise his own judgment in determining whether to revoke a passport and whether to issue a new passport (or renew an existing one) for emergency or humanitarian reasons. In short, only the Secretary of State, not the Commissioner, may revoke or deny a passport, and the Secretary of State's authority does not derive from section 7345.

*Id.* at 113. Mr. Adams urges us to reconsider that holding. We decline to do so.

To the extent Mr. Adams intends to raise a broader claim than that addressed in *Rowen* and to challenge on constitutional grounds the authority the FAST Act gave the Secretary of State to deny or revoke the passports of individuals with seriously delinquent tax debts, *see* FAST Act § 32101(e), 129 Stat. at 1732, such a challenge must also fail, because we do not have jurisdiction to review the constitutionality of the Secretary of State's passport-related actions under FAST Act § 32101(e).[9]

Our sole jurisdictional grant under the FAST Act lies in section 7345(e)(1). Under that section, after the Commissioner certifies that a taxpayer has a seriously delinquent tax debt, "the taxpayer may bring a civil action against the United States in a district court of the United States, or against the Commissioner in the Tax Court, to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification." In that action, "[i]f the court determines that such certification was erroneous, then the court may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous." I.R.C. § 7345(e)(2).

The text of section 7345(e) focuses exclusively on the Commissioner's actions certifying seriously delinquent tax debts and authorizes our Court (and the district courts) to determine whether those actions are erroneous. Section 7345(e)(1) makes no mention of the Secretary of State's passport actions or FAST Act § 32101(e) and provides no authority for us (or the district courts) to review those actions or to issue any orders to the Secretary of State with respect to passport actions.[10] This is a meaningful omission and unlikely to be

---

[9] For cases involving challenges to adverse passport actions by the Secretary of State, see, for example, *Franklin v. United States*, 49 F.4th 429 (5th Cir. 2022), *Maehr v. U.S. Dep't of State*, 5 F.4th 1100 (10th Cir. 2021), and *Jones v. Mnuchin*, 529 F. Supp. 3d 1370 (S.D. Ga. 2021). These cases illustrate the proper procedural route for challenging the constitutionality of the Secretary of State's actions under the FAST Act, while also demonstrating that neither district courts nor the courts of appeals have been receptive to constitutional arguments similar to those Mr. Adams offers here.

[10] The actions of the Secretary of State would be reviewable in district court under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and 28 U.S.C. § 1331 in an appropriate case. *See, e.g.*, *Maehr*, 5 F.4th at 1106–07. *See generally* 14 Charles

attributable to congressional oversight, as the text of section 7345 and the structure of FAST Act § 32101 confirm.

As to the text, section 7345(a) expressly discusses three governmental actors—the Commissioner (who certifies a seriously delinquent tax debt), the Secretary of the Treasury (who transmits that certification to the Secretary of State), and the Secretary of State (who receives the certification "for action with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the FAST Act"). By contrast, section 7345(e)(1)—the provision authorizing judicial review—mentions only the Commissioner's certification without reference to the Secretary of State or to any passport action. Similarly, the orders authorized under section 7345(e)(2) focus on the certification action, not any passport action. And the action in our Court is instituted "against the Commissioner," not against the Secretary of State. I.R.C. § 7345(e)(1). In our view, such precise drafting was intentional.

Turning next to the structure of FAST Act § 32101, as we observed in *Rowen*, 156 T.C. at 107–10, that provision contained seven operative subsections, four that amended the Code and provided rules for the Commissioner and the Secretary of the Treasury, and three that provided rules for the Secretary of State. Of relevance here, subsection (a) enacted section 7345 and the certification rules that govern the conduct of the Commissioner, while subsection (e) enacted the passport rules that govern the conduct of the Secretary of State in connection with that certification. The judicial review provision that authorizes our review here (section 7345(e)) was included in FAST Act § 32101(a) and, as just explained, makes no reference to FAST Act § 32101(e). In light of the structure of FAST Act § 32101, we have no reason to think that the text of section 7345(e) should mean something other than what it says. Indeed, given our Court's historical specialization in tax matters and disputes involving the Commissioner, there is every reason to think it means exactly what it says.

In short, if Congress had intended to authorize us to review the passport actions of the Secretary of State under section 7345(e), it certainly knew how to say so. It did not take that step, and our Court exercises jurisdiction only over matters that Congress expressly authorizes us to consider. *See* I.R.C. § 7442; *Estate of Young v. Commissioner*, 81 T.C. 879, 881 (1983). We therefore conclude that we

---

Alan Wright, Arthur R. Miller & Helen Hershkoff, *Federal Practice and Procedure* § 3659, Westlaw (database updated April 2022).

do not have jurisdiction to review the constitutionality of the Secretary of State's passport actions under section 32101 of the FAST Act.

III.    *Conclusion*

In view of the foregoing, Mr. Adams's Motion for Summary Judgment must be denied, and the Commissioner is entitled to judgment as a matter of law.

Accordingly,

*An appropriate order and decision will be entered.*